2014 COA 8M

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Edward Peter CONYAC, Defendant–Appellant.**

**Court of Appeals No. 09CA2409**

Colorado Court of Appeals, Div. II.

Announced January 30, 2014

As Modified on Denial of Rehearing March 27, 2014

I do not reach defendants' contention that any error was harmless.

Larimer County District Court No. 08CR303, Honorable Jolene Carman Blair, Judge

John W. Suthers, Attorney General, Katharine Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, James S. Hardy, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, Edward Peter Conyac, appeals the judgment of conviction entered on jury verdicts finding him guilty of three counts of incest, three counts of sexual assault on a child—position of trust, and one count of sexual assault on a child—position of trust pattern of abuse, all concerning his stepdaughter, KT. He also appeals his habitual criminal adjudication. We affirm.

## I. Background

¶ 2 KT informed her mother, LC, that defendant, her stepfather, had molested her. KT told the police and a forensic interviewer that defendant had vaginally and anally assaulted her three times between 2006 and 2008 at three different residences where the family had lived.

¶ 3 During a police interview, defendant confessed to "four or five" incidents of sexual assault, but asserted that KT had initiated it. Defendant's confession mirrored KT's factual allegations concerning the three different residences where the abuse had occurred and the intercourse positions, and in several other particulars discussed below.

¶ 4 Several days after KT's outcry, Dr. Crawford, a pediatrician who specialized in sexual assault examinations, examined KT. Dr. Crawford's report stated that the examination revealed no abnormalities, but also noted that the lack of findings did not necessarily mean that the sexual assaults did not happen.

¶ 5 By the time of trial, defendant had recanted his confession. He contended that KT had fabricated the allegations because she desired to exclude defendant, the household disciplinarian, from the home. Defendant presented evidence that one of KT's friends had confided to KT that she was being abused and that KT was in a sexual education class at school. He argued that KT knew how to make a sexual assault allegation and the consequences of doing so.

¶ 6 Defense counsel asserted in opening statements that defendant's confession was coerced and that he told the police merely what they wanted to hear. Counsel asserted that defendant had confessed only so he could timely participate in an upcoming hearing on a previously-filed dependency and neglect (D & N) case concerning the family, and so that LC could retain custody of the children. Defense counsel also asserted that defendant had confessed because of lack of sleep and the effect of medications he was taking.

¶ 7 During trial, the prosecution was allowed to elicit information that defendant had requested anal sex from LC, but she had declined. Defendant attempted to introduce evidence of KT's prior sexual acts, which included acting out sexually at age nine and a Utah Department of Human Services investigation indicating that she may have sexually assaulted a younger child. The court excluded the evidence.

¶ 8 Defendant also sought to introduce detailed information regarding LC's involvement with Utah and Colorado social services departments. This evidence included LC's belief that at age nine KT may have been sexually abused by her biological father and LC's agreement with Colorado authorities to "support" KT in her allegations of defendant's abuse. The trial court excluded the evidence.

¶ 9 During the prosecution's rebuttal closing argument, the prosecutor responded to defendant's theory that KT had fabricated the allegations and that the confession was false by asserting that defendant's presumption of innocence was "gone"; that to believe defendant's story, the jury would have to conclude that KT told a lie so well that both the police and social services "followed through"; and implored the jury to "do justice" for KT.

¶ 10 Following defendant's conviction, the trial court found defendant was a habitual criminal and imposed seven concurrent sentences of forty-eight years to life in the cus-

tody of the Department of Corrections. Defendant brought this appeal.

## II. Challenge for Cause

¶ 11 Defendant asserts the trial court erred in denying a challenge for cause to Juror M. We disagree.

### A. Preservation and Standard of Review

■ ¶ 12 We first reject the People's contention that this issue is unpreserved. While defense counsel's challenge did not expressly state that it was for cause, the challenge took place in chambers, the trial court understood it to be a causal challenge, and the context of the challenge makes clear it was a challenge for cause. We thus conclude the issue is preserved.

■ ¶ 13 We review the trial court's denial of a challenge for cause for an abuse of discretion and will reverse its determination only if there is no evidence in the record to support it. *People v. Palomo,* 272 P.3d 1106, 1108 (Colo.App.2011). The abuse of discretion standard gives deference to the trial court's credibility assessments, recognizing that court's unique perspective in evaluating the demeanor and body language of live witnesses, and it serves to discourage an appellate court from second-guessing the trial court's assessments based on a cold record. *People v. Samson,* 2012 COA 167, ¶ 15, 302 P.3d 311.

■ ¶ 14 We review the entire voir dire to determine whether the trial court abused its discretion. *Carrillo v. People,* 974 P.2d 478, 486 (Colo.1999).

### B. Applicable Law

■ ¶ 15 To ensure a defendant's right to a fair trial before an impartial jury, a trial court must sustain a challenge for cause when "[t]he existence of a state of mind in the juror evinc[es] enmity or bias toward the defendant or the state." § 16–10–103(1)(j), C.R.S.2013. However, section 16–10–103(1)(j) also states that no prospective juror "shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." *Id.* Thus, a trial court is entitled to afford considerable weight to a juror's commitment to set aside biases and to be fair. *Samson,* ¶ 14.

■ ¶ 16 A juror who cannot adhere to the principle that a defendant has a presumption of innocence must be excused. *People v. Gurule,* 628 P.2d 99, 102 (Colo.1981).

### C. Application

■ ¶ 17 Here, during a chambers interview to discuss her juror questionnaire responses, Juror M explained that, seven years previously, her niece had been sexually assaulted and murdered by her sister's live-in boyfriend, and that she had testified at the trial against her sister and the boyfriend. When the trial court inquired whether her experience would affect her ability to be a fair and impartial juror, she stated:

> I don't believe so. I have been a preschool teacher for twelve years. I'm not currently right now, but I understand there are things that, you know, children may make up. Adults lie, children lie. There are, you know, everyone has the right to be, you know, *to prove their innocence, or prove their guilt,* whatever the case may be.

(Emphasis added.)

¶ 18 In response to the court's questioning, Juror M stated that she could set aside the events in her past, follow the instructions of the court, and decide the case based on the evidence. And, during questioning by both defense counsel and the prosecutor, Juror M stated that, although the case would be hard for her, she could consider the evidence in the case and make a decision and follow the presumption of innocence, recognizing that defendant did not have to prove his innocence. She also stated that her experience gave her a better view of the case because she would be able to stay fair and balanced.

¶ 19 Given the full voir dire discussion with Juror M, we perceive no abuse of discretion in the court's determination that she had not

manifested unyielding bias for or against either party. Hence, we reject defendant's contention.

### III. Expert Witness Testimony

¶ 20 Defendant asserts that the trial court erroneously allowed two unqualified prosecution witnesses to testify as experts about unreliable, irrelevant, and prejudicial sexual offender profiles and the statistical prevalence of physical evidence in sex assault cases. We disagree.

### A. Standard of Review

¶ 21 A trial court has broad latitude in determining whether a witness is qualified to be an expert witness. *People v. Whitman*, 205 P.3d 371, 383 (Colo.App.2007).

¶ 22 We review the trial court's admission of expert testimony for an abuse of discretion, *People v. Tunis*, 2012 COA 126, ¶ 3, 2012 WL 3127296, and will not overturn the court's determination unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Masters*, 33 P.3d 1191, 1201 (Colo.App.2001), *aff'd*, 58 P.3d 979 (Colo.2002). This deferential review reflects the superior position of the trial court to assess the expert's competence and whether the expert's opinion will be helpful to the jury. *People v. Rector*, 248 P.3d 1196, 1200 (Colo.2011).

¶ 23 In reviewing the court's ruling regarding expert testimony, we afford the evidence the maximum probative value and minimum unfair prejudice. *Whitman*, 205 P.3d at 383.

### B. Applicable General Law

¶ 24 Under CRE 702, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Thus, a person may qualify as an expert witness based on experience-based specialized knowledge that is not dependent on a scientific explanation. *Salcedo v. People*, 999 P.2d 833, 838 (Colo.2000).

¶ 25 To admit such testimony, a trial court must find that the testimony would be useful to the trier of fact and that the witness is qualified to render an expert opinion on the subject. *Id.* To determine whether the testimony would be useful to the jury, the trial court must consider whether the testimony would be logically relevant and whether the probative value of the testimony would be substantially outweighed by the danger of unfair prejudice under CRE 403. *Id.*

### C. "Profile" Law

¶ 26 In *Salcedo*, 999 P.2d at 837, the court held that expert testimony on drug courier profiles is inadmissible as substantive evidence of guilt. Federal courts have similarly held. *See, e.g., United States v. Long*, 328 F.3d 655, 666 (D.C.Cir.2003). However, the "profile" label is not helpful in distinguishing admissible from inadmissible expert testimony. *Id.* Instead, courts focus on the purpose for which the evidence is offered: whether it is improper propensity evidence designed to show the defendant's character, or whether it instead seeks to aid the jury in understanding a pattern of behavior beyond its normal experience. *Id.* Thus, "experts may testify regarding the modus operandi of a certain category of criminals where those criminals' behavior is not ordinarily familiar to the average layperson." *Id.*

### D. Application—Moore

#### 1. Profile Testimony

¶ 27 Here, the prosecutor tendered and the court qualified Ms. Kandy Moore as an expert in child sexual abuse and sex offender characteristics. Defendant asserts that she testified to sexual offender profile characteristics when she testified that (1) child molesters "groom" their victims by participating in activities with them that tend to isolate and confuse the child as to whether the offender is doing something improper, and gave examples of overt and subtle grooming tactics; (2) only about five to ten percent of child victims are assaulted by a stranger; (3) in her clinical practice, over half of her cases involved situations in which the child had been assaulted by a family member; (4) child molesters are likely to

exhibit some type of minimization or denial about what they have done, and gave examples of that; and (5) some child molesters may justify their actions, and she gave examples of forms of justification.

¶ 28 The prosecutor stated no specific reason for offering Moore's testimony. However, following the analytical approach of *Long, id.* at 667, we conclude that this evidence was not profile evidence, but served to educate the jury concerning child victims and adult perpetrators of sexual abuse, and the dynamics of sexual abuse of children. As such, the evidence was relevant to aid the jury concerning the modus operandi of sex offenders and was useful because jurors cannot be presumed to have knowledge of such characteristics. Here, where defendant denied that he committed any offense, the fact that his modus operandi was consistent with the modus operandi of sex offenders generally made it more likely than not that he committed the offenses at issue.

¶ 29 Accordingly, *Salcedo* is distinguishable. As the supreme court clarified in *Masters v. People,* 58 P.3d at 993, the holding in *Salcedo* is very narrow, applying only to exclude drug courier profiles as substantive evidence of a defendant's guilt. The profile presented in *Salcedo* was problematic because it was used to prove that the defendant was a drug courier. Indeed, the expert witness in *Salcedo* testified that the defendant "fit" the courier profile. *Salcedo,* 999 P.2d at 836.

¶ 30 Here, in contrast, Moore did not testify that defendant "fit" the characteristics of a sex offender, nor did she opine that KT fit the profile of a sexual assault victim. Further the prosecutor did not argue that her testimony should be used for that purpose. Instead, Moore provided the jury with background information on patterns of child sexual abuse and behaviors that she had observed in her clinical practice of treating both victims and offenders. *See United States v. Batton,* 602 F.3d 1191, 1202 (10th Cir.2010) (expert testimony that sex offenders are generally not strangers to their victims properly admitted because testimony concerned criminal methods outside the common knowledge of lay jurors); *United States v. Hitt,* 473

F.3d 146, 158–59 (5th Cir.2006) (rejecting the defendant's profile testimony argument and concluding that admission of modus operandi of child molesters was not an abuse of discretion); *United States v. Hayward,* 359 F.3d 631, 636–37 (3d Cir.2004) (expert testimony regarding grooming techniques of child molesters admissible); *Long,* 328 F.3d at 667 (upholding trial court's admission of expert witness testimony regarding the behavior and characteristics of sex offenders, which included a description of the "grooming" process).

¶ 31 *United States v. Gillespie,* 852 F.2d 475, 479 (9th Cir.1988), on which defendant relies, is inapposite. There, the court held that the trial court's admission of testimony concerning the "characteristics of a molester" was improper character testimony under Fed.R.Evid. 404(a). The court ruled the evidence inadmissible because the defendant did not place his character in issue during the trial. But here, defendant did not object to the expert's testimony under CRE 404(a).

¶ 32 *United States v. Banks,* 36 M.J. 150, 161–62 (C.M.A.1992), is likewise distinguishable because the evidence at issue there was proffered under Mil. R. Evid. 404(a), the equivalent rule to Fed.R.Evid. 404(a), as expert character profile evidence to substantively establish guilt. Here, in contrast, the testimony was not that defendant "fit" a profile. The evidence served to aid and educate the jury, it was relevant to show modus operandi, and to provide the jury with background information on patterns of child sexual abuse and behaviors. *But see United States v. Raymond,* 700 F.Supp.2d 142, 149 (D.Me.2010) ("a categorization of behavioral characteristics of child victims is the 'subjective conclusory approach' that cannot be 'reasonably assessed for reliability' under Rule 702."); *Bowen v. Haney,* 622 F.Supp.2d 516, 544 (W.D.Ky.2008) ("the view of the Kentucky courts concerning the exclusion of pedophile profile testimony is by far away the majority view among all the state courts"); *Commonwealth v. Poitras,* 55 Mass.App.Ct. 691, 774 N.E.2d 647, 650 (Mass.App.2002) ("the expert fatally crossed the line, however, between proper 'abused child' profile opinion and impermissible profile opinion when she

testified at length ... about the typical attributes and characteristics of those most likely to abuse children, which mirrored prior prosecution evidence about the defendant.").

¶ 33 The evidence was also permissible to rebut defendant's assertion that his confession was a product of police coercion and stated only what the police wanted to hear, and his assertion that KT had fabricated the assaults. *See Long,* 328 F.3d at 667–68 (acknowledging testimony was helpful to rebut defense of victim's fabrication).

### 2. Relevancy & Prejudice

¶ 34 Defendant further contends that Moore's testimony was unduly prejudicial under CRE 403. Giving her testimony the maximum probative value and minimal prejudicial effect, we reject the contention.

¶ 35 Here, the trial court instructed the jury in voir dire and prior to deliberations about its role in weighing testimony and deciding witness credibility. In addition, the court instructed the jury immediately before Moore's testimony that it was to weigh and judge expert testimony as it would any other testimony, and it could accept or reject the testimony in whole or in part.

¶ 36 Moore was also thoroughly cross-examined at trial. Moreover, it was defendant's counsel who referenced her testimony in closing, where counsel argued that it did not corroborate either defendant's or KT's statements. It was only in rebuttal, in response to defense counsel's argument about lack of corroboration, that the prosecutor referenced Moore's testimony concerning grooming and minimization. Further, the jury saw defendant's videotaped confession mirroring KT's allegations and heard KT testify about the abuse.

¶ 37 Under these circumstances, we conclude that Moore's testimony was not unfairly prejudicial because of the substantial other evidence against defendant, the court's instructions to the jury, and defendant's thorough cross-examination of the witness.

### 3. Expert Qualifications

¶ 38 Defendant also asserts that Moore was not qualified to give expert testimony regarding offender characteristics. We disagree.

¶ 39 Moore testified that she is a psychotherapist who has treated adult sex offenders and child victims since 1986. Since 1998, she has been qualified under the Sex Offender Management Board (SOMB) guidelines to provide therapy to adult sex offenders, and she received forty hours of additional training every three years to stay current with the SOMB. At the time of trial, Moore had completed over 1500 hours of on-the-job training through the SOMB in order to treat sex offenders. In 2006, she became a full operating officer of the SOMB, meaning that she no longer needs supervision to treat sex offenders.

¶ 40 Defendant points out that, during defense counsel's voir dire of her, Moore acknowledged that she had not been qualified as an expert in offender characteristics in a previous case. But that does not preclude, as a matter of law, Moore's qualification on that basis here. The trial court specifically found that Moore was qualified as an expert in the areas of child sexual abuse and perpetrators of child sexual abuse because of her SOMB training, certification, the number of hours of training, and her actual experience treating sexual offenders.

¶ 41 Given the extent of Moore's education, training, and experience with treating sexual offenders and victims, and the court's findings, we perceive no abuse of discretion in qualifying her as an expert. *See Whitman,* 205 P.3d at 383 (therapist had treated victims of sexual abuse for seventeen years, attended multiple workshops, delivered presentations, was knowledgeable about literature in the field, and had testified in court previously as an expert). The fact that, at some time before this trial, Moore failed to qualify as an expert in offender characteristics is of no moment, inasmuch as the record does not disclose her qualifications at that time.

### 4. Disclosure of Bases of Testimony

¶ 42 To the extent defendant contends the court erred in failing to require Moore to disclose the bases of her testimony, we reject the contention.

¶ 43 Defendant requested the trial court to hold a hearing under *People v. Shreck*, 22 P.3d 68 (Colo.2001), and appears to contend that the court erred in failing to grant one. But we are aware of no authority, and defendant has cited none, holding that such a hearing is required. *See Rector*, 248 P.3d at 1201 (trial court may, in its discretion, determine whether an evidentiary hearing would be helpful). Furthermore, the trial court was familiar with Moore, having knowledge of her testimony in previous cases. In addition, defendant's counsel had the opportunity to interview Moore before trial and did so.

### E. Application—Dr. Crawford

¶ 44 Defendant next asserts that the trial court erred in allowing Dr. Crawford to give expert testimony that "there are no physical findings in 90 to 95 percent" of child sex assault cases, because that testimony was not supported by the prosecution's disclosures, and was irrelevant and unfairly prejudicial. We disagree.

¶ 45 Defense counsel, during trial and immediately before Dr. Crawford's testimony, made an oblique request for the court to require the prosecution or Dr. Crawford to provide the authority for her testimony that ninety to ninety-five percent of child sex assault cases had no physical evidence of abuse. Defense counsel argued that this issue had recently come to light.

¶ 46 The trial court found, and the record supports, that Dr. Crawford testified at a previous motions hearing in this case where she was subject to cross-examination and her curriculum vitae was provided. Furthermore, her report, which was provided to defense counsel in discovery, stated that KT's "genital exam is normal but a normal exam does not exclude the possibility of abuse." And, when defendant objected to Dr. Crawford's testimony at trial, the prosecution responded that it had sent defense counsel a letter in October 2008 stating what Dr. Crawford would testify to, including the statistical information. The prosecution also asserted that defendant had received publications in discovery that included the statistical information to which Dr. Crawford would testify. On appeal, defendant does not dispute the existence of the letter or prior disclosure of relevant publications.

¶ 47 Pursuant to Crim. P. 16(d)(1), the court, in its discretion and upon defense counsel's showing that the request is reasonable, may require the disclosure to the defense of relevant material not covered by the mandatory Crim. P. 16 disclosures.

¶ 48 Here, the trial court overruled defense counsel's objection because Dr. Crawford had been subject to pretrial cross-examination and her qualifications had previously been disclosed. Under these circumstances, we discern no error in the court's determination to deny defendant's last-minute request for additional Crim. P. 16 disclosures.

¶ 49 Defendant's argument that Dr. Crawford's testimony was irrelevant and unfairly prejudicial also fails. In defense counsel's opening statement, she referenced Dr. Crawford's examination of KT and the scientific equipment used in her examination. Defense counsel told the jury it would hear that the examination showed no signs of sexual assault.

¶ 50 Dr. Crawford's testimony that she did not expect to see physical findings in a child sexual assault case because the abuse may not have been recent, because the genital areas heal very quickly in children, because the penetration may not have been significant enough to cause injury, and because her research revealed that there are no physical findings in ninety to ninety-five percent of cases, was relevant to rebut defense counsel's argument concerning the lack of physical evidence and to explain to the jury why the lack of physical findings in KT's case did not refute KT's allegations.

¶ 51 When we give this testimony the maximum probative value attributable by a reasonable factfinder and the minimum unfair prejudice to be reasonably expected, *see People v. Gibbens*, 905 P.2d 604, 605 (Colo.1995), we conclude that it was not unfairly prejudicial to defendant, given his confession and Dr. Crawford's unrebutted testimony that a lack of physical findings does not negate a child victim's allegations of sexual assault.

## IV. Unendorsed Expert Testimony by Officer

¶ 52 Defendant next contends that the trial court erred in permitting a law enforcement officer to testify as a lay witness to an unendorsed expert opinion on interrogation techniques during which the witness improperly commented on the administration of a polygraph and upon defendant's credibility. We disagree.

### A. Standard of Review and Preservation

 ¶ 53 We review a trial court's evidentiary ruling concerning lay testimony for an abuse of discretion to determine whether error has occurred. *People v. Chavez*, 190 P.3d 760, 765 (Colo.App.2007). Here, we conclude that defendant did not preserve this issue by filing his pretrial motion to exclude evidence of his polygraph examination. The motion did not allude to unendorsed or unnoticed expert testimony or make arguments based on CRE 701 or 702. Because defendant did not object to any of the officer's statements based on unnoticed or unqualified expert testimony (the grounds that he is now asserting on appeal), we review the contentions for plain error. *People v. Malloy*, 178 P.3d 1283, 1288 (Colo.App.2008).

 ¶ 54 Under the plain error standard, the defendant bears the burden to establish that an error occurred, and that at the time the error arose, it was so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection. *People v. Ujaama*, 2012 COA 36, ¶ 42, 302 P.3d 296. The defendant must also establish that the error was so grave that it undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the conviction. *Id.* at ¶ 43.

 ¶ 55 Concerning defendant's contention that the officer was improperly allowed to comment on his credibility, because defendant objected to part of the officer's testimony, we will consider this issue preserved.

¶ 56 A trial court has broad latitude in determining the admissibility of evidence, and we review its determination for an abuse of discretion. *Davis v. People*, 2013 CO 57, ¶ 13, 310 P.3d 58. A trial court abuses its discretion if its decision is "manifestly unreasonable, arbitrary, or unfair." *Id.* (internal quotation marks omitted). If we discern an abuse of discretion, and the issue is preserved, we review for harmless error and consider whether the error, in light of the entire record at trial, substantially influenced the verdict or impaired the fairness of the trial. *Id.*

### B. Applicable Law

¶ 57 Under CRE 701, lay opinion testimony is limited to the witness's opinions or inferences that are (1) rationally based on the perception of the witness; (2) helpful to understand the witness's testimony or the determination of a fact in issue; and (3) not based on scientific or other specialized knowledge within the scope of CRE 702. CRE 701.

 ¶ 58 Police officers regularly and appropriately offer lay opinion testimony under CRE 701 based on their perceptions and experiences. *Malloy*, 178 P.3d at 1288 (citing *People v. Stewart*, 55 P.3d 107, 123 (Colo. 2002)). But when a police officer's testimony requires "the application of, or reliance on, specialized skills or training, the officer must be qualified as an expert [under CRE 702] before offering such testimony." *Id.*

 ¶ 59 The critical inquiry is thus whether the witness's testimony is based upon "specialized knowledge." *See, e.g., Medina v. People*, 114 P.3d 845, 859 (Colo. 2005); *Malloy*, 178 P.3d at 1288; *People v. Veren*, 140 P.3d 131, 137 (Colo.App.2005); *People v. Rincon*, 140 P.3d 976, 981–82 (Colo. App.2005). An opinion is based on specialized knowledge when it is not based on information known by ordinary citizens. *Rincon*, 140 P.3d at 982.

 ¶ 60 Generally, comments by one witness about another witness's truthfulness are improper. *Davis*, ¶ 15. However, a law enforcement officer may testify about his or her assessment of interviewee credibility when that testimony is offered to provide context for the officer's interrogation tactics and investigative decisions. *Id.* at ¶ 19 (citing *People v. Lopez*, 129 P.3d 1061, 1066

(Colo.App.2005)). The admissibility of any testimony hinges on the circumstances under which it is elicited and offered. *Id.*

### C. Application

¶ 61 Defendant contends that the officer testified concerning specialized knowledge and crossed the line into expert testimony when explaining the "tactics and techniques" of interviews.

¶ 62 The officer's testimony included information on "rapport-building sessions"; how he watched for verbal and nonverbal clues; and how he would confront interviewees when he believed they were not being truthful. He also testified that an interviewee's denial will become weaker as the interview progresses, and that he used the concept of justification and other themes to make interviewees feel better about confessing to a particular crime. The officer testified that he used all of these techniques when interviewing defendant.

¶ 63 Defense counsel objected to the officer's testimony regarding confronting interviewees, asserting it was an improper comment on credibility. The court overruled the objection and instructed the jury: "[i]t is my understanding that [the officer] is talking in generalities about interviews he's done in the past, his experience. He's not opining on what happened in this interview. . . . So it is for you to determine credibility of the statements and evidence you hear."

### 1. Polygraph Testimony

¶ 64 We first address defendant's assertion that the officer testified about his skills in lie detection, which implicated defendant's polygraph examination. We reject this argument.

¶ 65 Before trial, the court excluded all evidence concerning defendant's polygraph examination. At trial, the officer did not mention the polygraph or its results, or state that he confronted defendant about his untruthfulness because of the polygraph. The officer's statements regarding his typical technique for interviewing suspects, including confronting an interviewee when he believed he or she was not being truthful, cannot be stretched to infer that the officer was testifying about lie detection or polygraphs.

### 2. Expert Testimony

¶ 66 We now turn to whether the officer's testimony constituted expert opinion testimony. The officer's statements here were very basic and the interviewing concepts he described could be gleaned by an ordinary person through watching television or reading detective fiction or true crime materials. Nevertheless, we will assume, without deciding, that the officer crossed the line between lay testimony and expert testimony when he testified concerning his interview techniques.

¶ 67 Even so, we discern no plain error because the officer was qualified to offer such expert testimony given his training and experience. *See Malloy*, 178 P.3d at 1288–89 (because the defendant did not object to admission of the officer's opinion testimony, the court found no plain error because officer was amply qualified by experience and training to so testify) (citing *People v. Lomanaco*, 802 P.2d 1143, 1145 (Colo.App.1990)).

¶ 68 Here, the officer testified that he had been in law enforcement since 1978. He started as an investigator in the United States Air Force, and after serving in the military, moved to civilian law enforcement. He began as a patrol officer and was promoted to sergeant in charge of the Larimer County Crimes Against Persons Unit at the time of his interview with defendant. At the time of trial, he was the lieutenant in charge of the Larimer County Investigative Division.

¶ 69 Further, similar to the defendant in *Malloy*, defendant here does not assert that he was surprised by the testimony or unable to evaluate it before trial, or that he was deprived of an opportunity to obtain his own expert witness. *See id.* at 1289.

¶ 70 We therefore reject this contention.

### 3. Credibility Comments

¶ 71 We disagree with defendant's contention that the trial court erred in allowing the officer to testify about interview techniques because the testimony included improper comments regarding credibility.

¶ 72 *Davis*, ¶ 19, is dispositive of this issue. There, the court held that a law enforcement officer may testify about the officer's assessments of interviewee credibility when that testimony is offered to provide context for the officer's interrogation tactics. Here, the testimony was given in the context of explaining the tactics the officer normally uses in an interview and to give the jury context for defendant's recorded interview it would soon view.

¶ 73 Similar to the challenged testimony in *Davis*, the prosecutor here did not use inflammatory or prejudicial language in asking the officer about his interview techniques and the questions were not aimed at eliciting comments on the veracity of defendant's testimony. *Id.* at ¶ 20. And, in this case, unlike in *Davis*, the officer did not comment upon defendant's truthfulness in the interview except to say that he used all of the previously-noted tactics during his interview with defendant, which included confronting defendant when he felt defendant was being untruthful. Finally, the court here also issued the same limiting instruction given and found acceptable in *Davis*. *Id.* at ¶¶ 5, 21.

¶ 74 Based on the strong similarities between the situation here and that in *Davis*, we conclude that the officer's testimony was not an improper commentary on defendant's credibility, but instead was an explanation of the officer's interview tactics that were brought into question by defendant's allegation that his confession was coerced and a product of what he believed the police wanted to hear.

¶ 75 Hence, we perceive no error.

## V. Other Sexual Acts Evidence

¶ 76 Defendant asserts that the trial court erred in allowing LC to testify about his attempt or request for anal sex with her and her refusal. Defendant argues that this testimony violates CRE 404(b). We disagree.

### A. Preservation and Standard of Review

¶ 77 As previously noted, we review a trial court's evidentiary rulings for an abuse of discretion. *Id.* at ¶ 13. If the court abused its discretion, and the defendant pre-

served the issue, we determine whether the error was harmless. If the defendant did not preserve the issue, we must determine whether the error was plain. The People assert defendant did not preserve this issue. Accordingly, we first address that contention.

¶ 78 Defendant asserts that he preserved the issue pretrial when defense counsel stated that the prosecution had not provided any notice that evidence under CRE 404(b) would be proffered and that counsel did not expect any at trial. He also points out that defense counsel objected to this testimony in a bench conference called by the prosecution immediately before it questioned LC about anal sex. During this bench conference, counsel objected based on relevance and stated: "I don't think what a person does with an adult is anywhere near what a person does as a perpetrator of abuse to a child, but it will certainly be interpreted that way."

¶ 79 We conclude that defense counsel's statements are not sufficient to constitute an objection to introduction of the evidence under CRE 404(b). Accordingly, we review for plain error.

### B. Applicable Law

¶ 80 Evidence of a defendant's other acts is generally inadmissible to demonstrate a defendant's bad character or propensity to commit crimes. CRE 404(b). However, such evidence may be admissible for other purposes such as motive, intent, or identity. *Id.*; *People v. Munoz*, 240 P.3d 311, 319 (Colo.App.2009).

¶ 81 A four-part analysis determines whether other acts are admissible for other purposes: (1) whether the evidence relates to a material fact; (2) whether the evidence is logically relevant; (3) whether the evidence's logical relevance is independent of the inference that the defendant committed the charged crime because of the likelihood he acted in conformity with his bad character; and (4) whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. *Munoz*, 240 P.3d at 319 (citing *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990)).

¶ 82 Neither defendant nor the People have pointed to Colorado case law regarding the admissibility of a defendant's consensual sexual acts (or a request therefor) with a spouse in a trial for child sexual abuse, and we have found none. However, CRE 404(b) explicitly lists motive as an alternative acceptable purpose for other acts evidence, and case law from other jurisdictions is instructive on the issue.

¶ 83 In *State v. Dunston*, 161 N.C.App. 468, 588 S.E.2d 540, 545 (2003), the court concluded that evidence of the defendant's consensual anal sex with his wife was not admissible in the trial in which he was accused of having anal sex with a child under that state's evidentiary rule concerning other acts evidence, which is substantively identical to CRE 404(b). The court held that the evidence was inadmissible because the adult act was not by itself sufficiently similar to engaging in those same acts with a child. The court concluded that the evidence was not relevant for any purpose other than to prove defendant's propensity to engage in anal sex. *Id.*

¶ 84 But in *State v. Pullman*, 2013 UT App 168, ¶¶ 31–33, 306 P.3d 827, the court concluded that evidence showing defendant's wife refused to engage in anal sex with him was properly admitted under that state's Rule 404(b), again substantively identical to CRE 404(b), as evidence of the defendant's motive for attempting to engage in anal sex with the child victim. Citing similar cases holding such evidence admissible, the *Pullman* court distinguished its holding from *Dunston*, noting that the situation in *Dunston* lacked the element that created motive; in *Dunston* the defendant's wife consented to anal sex, whereas in *Pullman*, the defendant's wife refused. *Id.* at ¶ 37.

¶ 85 We find *Pullman* persuasive and conclude that a defendant's prior attempt or request to have anal sex with his spouse may be relevant concerning motive in a trial for child sexual abuse, provided the evidence otherwise satisfies CRE 404(b).

### C. Application

¶ 86 Here, the prosecutor offered the evidence to show that defendant was interested in performing that sexual act. The prosecutor stated that defendant "was interested in those activities, that LC told him no, and that he had ... a stepdaughter living in his home that he did engage in these activities with." Inferentially then, it was being offered for purposes of proving motive. Hence, the evidence related to a material fact and it had logical relevance, inasmuch as it tended to prove that defendant had a desire for anal sex that was unsatisfied because of LC's refusal to engage in it. That motive made it more likely than not that defendant committed an anal sexual assault upon KT.

¶ 87 Further, the logical relevance of the evidence is independent of the inference that defendant committed the charged crime because of the likelihood he acted in conformity with his bad character.

¶ 88 Finally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because, as the trial court pointed out, the request was made by one spouse to another.

¶ 89 Thus, we discern no error, let alone plain error.

### VI. Cross-examination of LC

¶ 90 Defendant asserts the court erroneously excluded evidence of the pending D & N case concerning LC and thereby improperly limited his right to cross-examination, his constitutional right to confront and cross-examine his accusers, and to present evidence in his defense. We disagree.

### A. Standard of Review

¶ 91 The scope and limits of cross-examination are matters within the sound discretion of the trial court. *People v. Raglin*, 21 P.3d 419, 426 (Colo.App.2000) (citing *People v. Raffaelli*, 647 P.2d 230, 234 (Colo. 1982)). Absent a showing of an abuse of that discretion, we will not disturb the rulings of the trial court on review. *People v. James*, 40 P.3d 36, 42 (Colo.App.2001).

¶ 92 While the court has discretion to limit cross-examination, it is constitutional error to limit excessively a defendant's

cross-examination. *Merritt v. People*, 842 P.2d 162, 167–69 (Colo.1992). If cross-examination is erroneously and excessively limited, it is reversible error unless the error is harmless beyond a reasonable doubt. *Id.*

¶ 93 An erroneous evidentiary ruling may rise to the level of constitutional error if it deprived the defendant of any meaningful opportunity to present a complete defense. *People v. Osorio–Bahena*, 2013 COA 55, ¶ 17, 312 P.3d 247. A defendant's right to present a defense is violated only where the defendant was denied virtually his only means of effectively testing significant prosecution evidence. *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo.2009).

¶ 94 If we conclude the evidentiary limitation did not deprive a defendant of his only means of testing prosecution evidence, reversal is required only if the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Id.* In contrast, if the error deprived defendant of his right to present a defense, we must reverse unless we are confident beyond a reasonable doubt that the error did not contribute to the guilty verdict. *Osorio–Bahena*, ¶ 17.

### B. Applicable Law

¶ 95 The rights to confront and cross-examine witnesses and present a defense are constitutionally guaranteed. U.S. Const. amends. VI, XIV; Colo. Const. art. II, sec. 16. It is constitutional error to excessively limit a defendant's cross-examination of a witness regarding the witness's credibility, especially concerning bias, prejudice, or motive for testifying. *People v. Chavez*, 313 P.3d 594, 603 (Colo.App.2011).

¶ 96 Evidence of pending charges may be admissible to show a witness's motive to testify, bias, or prejudice. *Kinney v. People*, 187 P.3d 548, 559 (Colo.2008). An error excluding evidence of pending charges is prejudicial if the jury would have had a significantly different impression of the witness's credibility had the defendant been allowed to pursue the desired cross-examination. *Id.*

¶ 97 However, the trial court has broad discretion to limit cross-examination based on concerns about, for example, prejudice, confusion of the issues, repetitiveness, and relevance. *See id.* Unless the court's restriction is so severe as to constitute a *denial* of the right to cross-examine the witness, the extent to which the cross-examination should be allowed is within the discretion of the trial court. *Raffaelli*, 647 P.2d at 234.

### C. Application

¶ 98 We first note that being a respondent in a D & N case is not the same as being a defendant in a pending criminal proceeding. A D & N case is a civil proceeding in which a child may be adjudicated dependent and neglected as a result of parental acts or omissions; the parent is not criminally charged. Even so, we will assume, without deciding, that evidence of a pending D & N case and matters involved in that case may be admissible if they are relevant to show the witness's motive to testify, bias, or prejudice, or bear materially on credibility.

¶ 99 Here, at the time of trial, LC was a respondent in a D & N case involving her children, including KT. Defendant sought to ask LC about the D & N case on cross-examination, specifically about a temporary order she entered into agreeing to "support" KT in her allegations. Counsel proffered this evidence for the purpose of showing LC's motive to testify at trial in support of KT in order to obtain a favorable outcome in the D & N case. Counsel also sought to show that LC was conflicted between defendant and KT and that LC had called police immediately following KT's outcry because of her significant involvement with social services over the years.

¶ 100 The trial court ruled that defendant could ask LC if she was conflicted between defendant and KT, but could not ask for more specifics about the D & N case based on relevancy issues, fear that LC's testimony could come too close to stating whether she believed defendant or KT, and confusion of the issues.

¶ 101 LC testified that the Department of Human Services (DHS) had been involved in her life for a number of years, both in Utah

and in Colorado. She stated that she was currently involved with a DHS investigation and that when DHS was involved with her family, she was afraid that DHS would take her children away. Defense counsel made it clear on cross-examination that DHS was involved with LC and her family at all three homes where the assaults were alleged to have occurred.

¶ 102 LC also testified that "there was a time where [she] was stuck" between defendant and KT. Pertinent to the abuse, LC testified that she never suspected that defendant was abusing KT, and that if she had known, she would have left defendant. She stated that she remained married to defendant and acknowledged visiting him in jail approximately twenty-five times after KT disclosed the abuse to her.

¶ 103 Given the extent of LC's testimony about DHS involvement in her life and her emotional conflict between defendant and KT, juxtaposed against her admissions that she was still married to defendant and had visited him in jail over twenty-five times, the fact that defendant was not permitted to go into details about the pending D & N case was not an erroneous limitation on cross-examination. Defense counsel was given wide latitude to explore LC's involvement with DHS and the jury heard that LC was afraid DHS would remove her children.

¶ 104 Concerning the temporary order in which LC agreed to "support" KT in her allegations, we conclude that any error was harmless beyond a reasonable doubt. Given LC's cross-examination on the subjects of the DHS involvement in her family and her conflict between believing defendant or KT, the exclusion of this additional evidence did not contribute to the guilty verdict. Indeed, whether LC believed defendant or KT would not have been a proper comment. See Liggett v. People, 135 P.3d 725, 729–30 (Colo. 2006) (a witness may not be asked to opine on the veracity of another witness).

¶ 105 Similarly, the extensive cross-examination of LC also shows that defendant was not deprived of his right to present a defense because he was not deprived of virtually his only means of challenging the prosecution's

evidence against him. See Krutsinger, 219 P.3d at 1062. The cross-examination clearly showed that LC had significant involvement with DHS and she was conflicted. Evidence concerning the temporary order was certainly not the only evidence of LC's bias or motive to testify.

## VII. KT's Prior Sexual Knowledge

¶ 106 The trial court excluded, under section 18–3–407(2), C.R.S.2013 (the rape shield statute), evidence of KT's prior sexual knowledge and familiarity with sexual assault investigations. On appeal, defendant asserts the trial court erred in excluding this evidence and the exclusion amounted to a violation of his right to confront and cross-examine his accuser. We disagree.

### A. Standard of Review

¶ 107 We review a trial court's evidentiary rulings, including its determination of admissibility under the rape shield statute, for an abuse of discretion. People v. Melillo, 25 P.3d 769, 772 (Colo.2001). An abuse of discretion occurs only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. Id.; see also People v. Harris, 43 P.3d 221 (Colo.2002); People v. Kyle, 111 P.3d 491, 496 (Colo.App.2004).

¶ 108 We reject defendant's assertion that the trial court's exclusion of this evidence presents a constitutional issue. Not every evidentiary ruling that affects a defendant's ability to challenge the credibility of the evidence against him amounts to a constitutional error. Krutsinger, 219 P.3d at 1062. Only if the trial court's ruling effectively bars the defendant from meaningfully testing evidence central to establishing guilt is the error of constitutional magnitude. Id.

¶ 109 Furthermore, Colorado courts have repeatedly concluded that the rape shield statute does not violate a defendant's right to confrontation or cross-examination. See, e.g., People v. McKenna, 196 Colo. 367, 371–72, 585 P.2d 275, 278 (1978); People v. Villa, 240 P.3d 343, 353 (Colo.App.2009); People v. Gholston, 26 P.3d 1, 8 (Colo.App.2000).

### B. Applicable Law

¶ 110 The purpose of the rape shield statute is to protect sexual assault victims from humiliating public fishing expeditions into their past sexual conduct, unless it is shown that the evidence is relevant to some issue in the case. *Kyle,* 111 P.3d at 496.

¶ 111 The rape shield statute creates a presumption that evidence relating to a rape victim's sexual conduct is irrelevant to the proceedings. § 18–3–407, C.R.S.2013. Prior sexual victimization and perpetration is considered "sexual conduct" under the rape shield statute. *Kyle,* 111 P.3d at 496; *Gholston,* 26 P.3d at 8.

¶ 112 The statutory presumption of irrelevance does not apply to (1) evidence of the victim's or witness's prior or subsequent sexual conduct with the actor or (2) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered to show that the acts charged were or were not committed by the defendant. § 18–3–407(1)(a), (b). If the evidence does not fall within one of these exceptions, the presumption of irrelevance can nevertheless be rebutted if the defendant offers sufficient proof that the evidence is relevant to a material issue in the case. § 18–3–407(2); *Kyle,* 111 P.3d at 497. Evidence proffered under section 18–3–407(2) is subject to CRE 401 relevancy and CRE 403 prejudice analyses. *Kyle,* 111 P.3d at 497.

¶ 113 A child victim's prior sexual knowledge may be relevant and have probative worth. *Pierson v. People,* 2012 CO 47, ¶ 17, 279 P.3d 1217. But the probative value of evidence of a child's exposure to other sexual conduct depends on the nature of the sex acts involved, as well as the child's age and circumstances, and his or her other sources of knowledge. *Id.* at ¶ 18.

### C. Application

¶ 114 Here, defendant filed a pretrial motion seeking to admit evidence (1) of a prior Utah DHS investigation concerning KT when she was nine years old for allegedly sexually touching other children and herself in the vaginal and anal areas; (2) of LC's concern that KT had been sexually abused by her biological father when KT was nine years old; and (3) that at age nine, KT was discovered putting objects in her vaginal and anal areas. The motion cited section 18–3–407(2), and asserted that this evidence was relevant to rebut the inference that KT would not know about sexual acts unless she experienced them with defendant; to demonstrate KT's prior experience with and understanding of the consequences of allegations of sexual misconduct; and to explain LC's actions in immediately contacting the police upon KT's outcry.

¶ 115 The trial court concluded that none of the evidence was relevant to a material issue in the case. First, it held that KT's having sexually touched herself and another child was exactly the type of evidence the rape shield statute was intended to prevent, and that any relevance would be clearly outweighed by its prejudicial effect. Second, the evidence was not relevant to show KT's understanding of the consequences of sexual assault allegations because the Utah records showed that KT was not a complaining witness; that no one was removed from her home as a result of the suspicions; and that KT experienced no consequences regarding the allegations that she sexually abused a younger child. Third, the court determined that the issue of LC immediately contacting the police upon KT's disclosure was not a materially relevant issue in the case.

¶ 116 On appeal, defendant renews his assertion that the evidence was relevant to rebut the "natural assumption" that KT could only know about such facts from defendant and to support his defense that KT's allegations were aimed at removing him from the home because she disliked his rules and disciplinary efforts. He contends that the Utah investigation demonstrated KT's awareness of the seriousness of sexual abuse allegations and the way the government responds when someone is suspected of sexual misconduct. We disagree.

#### 1. Prior Sexual Knowledge

¶ 117 Contrary to defendant's argument, Colorado case law does not assume or

presume that a child victim is sexually naïve. Instead, Colorado courts have stated that sexually mature children may be less likely to be confused about the perpetrator's identity and are capable of understanding matters of a sexual nature. *Kyle,* 111 P.3d at 498 (citing *State v. Rolon,* 257 Conn. 156, 777 A.2d 604 (2001)). Indeed, "while it might be possible, with regard to children of a sufficiently tender age, to infer, without more, a complete lack of knowledge about sexual matters ... this could hardly be the case of a child old enough to interact with other children and come in contact with television or other forms of media entertainment." *Pierson,* ¶ 20.

¶ 118 Likewise, Colorado courts have looked to whether the defense or the prosecution has relied upon the inference that a child of a certain age would or would not have knowledge of sexual acts. *Id.* at ¶ 18 (the defendant did not present evidence of eight-year-old victim's sexual sophistication or expert opinions about the sexual sophistication of eight-year-olds in general); *Kyle,* 111 P.3d at 497–98 (finding it significant that the prosecution did not assert that the thirteen-year-old victim could only have learned about sexual acts through the assaults defendant committed or that the victim's age was such that an inference could arise that he would not know about sexual acts unless he experienced them with defendant).

¶ 119 Here, KT was eleven and twelve at the time of the assaults and thirteen at the time of trial. KT would have had access to her middle school peers, social media, television, and music that would have contributed to her knowledge of sexual matters. *Pierson,* ¶ 20.

¶ 120 Moreover, defense counsel presented evidence and argued during closing that KT knew about sexual assault allegations because of a friend who admitted to KT that she had been sexually assaulted, and the sexual education class KT was enrolled in at school. The jury could therefore consider alternative bases for KT's sexual knowledge besides that gained from defendant's alleged assaults.

¶ 121 The prosecutor also did not raise the issue of precocious sexual knowledge or argue that KT was sexually naïve and that her experience with defendant was the only source of her ability to describe the sexual abuse. And neither defense counsel nor the prosecutor asked questions about sexual innocence or similar issues during voir dire. In fact, some potential jurors stated they believed a child could lie about sexual issues.

¶ 122 Defendant asserts on appeal that the prosecutor's rhetorical question and answer in closing argument—"does anyone really think that 12–year–old [KT] was sophisticated enough to pull off this lie? .... This is not a child who is sophisticated enough to make this up and to stick with it for 14 months"—was a comment on KT's sexual naïveté. We reject this argument.

¶ 123 The context of the prosecutor's rebuttal reveals that "sophisticated" referred to KT's intellectual ability to make up an assault of this magnitude and remain substantively consistent in her allegations. It was a rebuttal to defense counsel's closing argument that KT made up the allegations to evict defendant, the disciplinarian, from her home.

¶ 124 Because KT was old enough to know about sexual matters regardless of her experience with defendant, there was alternative evidence of KT's outside sexual knowledge, and the prosecution did not argue that KT was sexually naïve and had no other source of sexual knowledge, we conclude that the trial court did not abuse its discretion in determining that KT's prior sexual knowledge from the Utah DHS investigation was inadmissible.

### 2. Consequences of Sexual Assault Allegations

¶ 125 The trial court reviewed the records from the Utah DHS investigation in camera. It found that the investigation did not demonstrate KT understood the consequences of a sexual abuse allegation because she had not made an outcry of sexual abuse, her biological father was not removed from the home, and she did not suffer any consequences as a result of the allegation against her. These findings are supported by the record and rebut defendant's assertion that

KT knew the consequences of alleging sexual assaults. Hence, we cannot say that the trial court abused its discretion in finding defense counsel's offer of proof was insufficient on this ground.

### 3. LC's Reaction to KT's Disclosure

¶ 126 Defendant does not renew on appeal his assertion that the evidence was admissible to explain LC's conduct in immediately contacting the police in reaction to KT's report of abuse. Accordingly, we will not address that issue.

### VIII. Prosecutorial Misconduct

¶ 127 Defendant next asserts that prosecutorial misconduct in the rebuttal closing argument requires reversal. We disagree.

### A. Preservation and Standard of Review

¶ 128 On appeal, defendant raises three contentions of prosecutorial misconduct, including a statement by the prosecutor that, following the close of the evidence, defendant's presumption of innocence was "gone." But his counsel did not object to that statement; thus, we will review it for plain error. *See People v. Estes*, 2012 COA 41, ¶ 19, 296 P.3d 189 (reviewing for plain error allegations of prosecutorial misconduct concerning the defendant's presumption of innocence).

¶ 129 Concerning the other contentions, defendant's counsel objected that the prosecutor had made an improper "screening process" and "personal opinion" argument. Because the objection to that comment is preserved, we review for harmless error. *Wend v. People*, 235 P.3d 1089, 1097 (Colo.2010). Concerning the prosecutor's request for "justice for KT," to which there was no contemporaneous objection, we review for plain error. *Id.*

¶ 130 Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Strock*, 252 P.3d 1148, 1152–53 (Colo.App.2010). To qualify as such, the misconduct must be flagrantly, glaringly, or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the

judgment of conviction. *People v. Weinreich*, 98 P.3d 920, 924 (Colo.App.2004), *aff'd*, 119 P.3d 1073 (Colo.2005). Improper closing argument rises to this level if the probable effect is a verdict based on bias and prejudice rather than on the relevant facts and applicable law. *People v. Mandez*, 997 P.2d 1254, 1268 (Colo.App.1999).

¶ 131 Defense counsel's lack of contemporaneous objection may indicate counsel's belief that the comments were not overly damaging when they were made. *People v. Douglas*, 2012 COA 57, ¶ 70, 296 P.3d 234 (citing *Domingo–Gomez v. People*, 125 P.3d 1043, 1054 (Colo.2005)).

### B. Applicable Law

¶ 132 Closing argument must be confined to the evidence admitted at trial, the inferences that can reasonably and fairly be drawn from the evidence, and the instructions of law submitted to the jury. *People v. Gladney*, 250 P.3d 762, 769 (Colo.App.2010). In evaluating claims of improper argument, a reviewing court must evaluate the conduct in the context of the argument as a whole and in light of the evidence before the jury. *Samson*, ¶ 30. In doing so, we recognize that a prosecutor may comment on the evidence and may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance. *Gladney*, 250 P.3d at 769.

¶ 133 A prosecutor also has considerable latitude in replying to opposing counsel's arguments, *People v. Iversen*, 2013 COA 40, ¶ 37, 321 P.3d 573, and in making arguments based on facts in evidence and reasonable inferences that can be drawn from those facts. *People v. McBride*, 228 P.3d 216, 221 (Colo.App.2009).

¶ 134 A prosecutor may not give a personal opinion on the defendant's guilt or the truth or falsity of witness testimony. *Domingo–Gomez*, 125 P.3d at 1048–49.

### C. Application

#### 1. Witness Credibility and Prosecutor's Opinion

¶ 135 In her closing argument, defense counsel asserted that KT had fabricat-

ed the allegations against defendant to have him removed from her house. Counsel argued that KT was troubled by her biological father's death and was angry with defendant for making her do her homework and clean her room. Counsel also argued that KT knew about sexual abuse allegations because of her friend's admission to KT and her sex education class at school.

¶ 136 In handling the issue of defendant's confession, defense counsel argued that the officers involved in defendant's interview used coercive tactics. She also argued that the prosecution was not confident in its case against defendant because it "loaded its case up" with experts Moore and Dr. Crawford and placed defendant in custody on a parole hold as opposed to immediately filing charges against him based on KT's outcry.

¶ 137 During rebuttal closing, the prosecutor made the following comment: "You were given an instruction about evaluating credibility. If [KT] is lying here she is a fantastic liar. She told a lie that was good enough to make Social Services follow through, to make the police follow through." Defense counsel objected to this statement on grounds that what Social Services thought of KT's believability was not relevant and it implied investigations that were not before the court.

¶ 138 The trial court overruled the objection and instructed the jury that "this is argument of counsel. It is not evidence. It is for you to determine the credibility of the witnesses that you've heard. It is for you to determine the facts." The prosecutor then argued that KT was not sophisticated enough to "pull off" a lie she had to tell, repeatedly, to various officials, for fourteen months. The prosecutor used examples from KT's interview and testimony, such as stumbling over her birth date and not being able to remember the word "foot," to show the absurdity of defendant's argument that KT was capable of deceiving all of these officials for such a long period. The prosecutor also stated that KT was not on a crusade to crucify defendant and she "tells the truth whether it helps or hurts."

¶ 139 In context, the prosecutor's comments were simply responsive to defense counsel's closing argument. The prosecutor did not give his opinion on the credibility of KT or the thoroughness of the investigation. Instead, he used rhetorical devices and argument to point out the weaknesses of defendant's theory of the case. *See Iversen,* ¶¶ 37, 38. Hence, we discern no error here, let alone plain error.

### 2. Presumption of Innocence

¶ 140 Defendant argues that the prosecutor's statement in rebuttal closing argument that the presumption of innocence was gone constitutes plain error requiring reversal. We disagree.

¶ 141 A defendant retains the presumption of innocence throughout the trial process unless and until the jury returns a guilty verdict. *Estes,* ¶ 32 (citing *McBride,* 228 P.3d at 223–24). Thus, as a jury evaluates the evidence, it must continue to presume the defendant innocent until it concludes that the evidence proves guilt beyond a reasonable doubt. *Id.* at ¶ 33. Divisions of this court in *Estes* and *McBride* concluded that a prosecutor may not argue that the presumption of innocence that had existed when the trial began was "gone" because of the presentation of evidence.

¶ 142 Here, the prosecutor stated, "[Defense Counsel] just told you that you should assume the defendant did nothing wrong. Absolutely not. That's how we started the trial. That is not how we end the trial, because you have heard evidence.... His presumption of innocence is gone." We disapprove of this comment. *See Estes,* ¶ 33.

¶ 143 Nevertheless, *McBride* and *Villa,* 240 P.3d 343, in which the divisions did not approve a similar presumption argument, were announced after the trial in this case occurred, and *Estes* was decided in 2012, well after the trial here. Hence, we cannot conclude that the error was obvious. *See People v. Pollard,* 2013 COA 31, ¶ 40, 307 P.3d 1124 (ordinarily, for an error to be obvious, the action challenged must contravene a clear statutory command, a well-settled legal principle, or Colorado case law); *People v. Zubiate,* 2013 COA 69, ¶ 24, —— P.3d —— (an error may be obvious if the issue has been

decided by a division of this court or the supreme court); *Ujaama*, ¶ 42 (same).

¶ 144 Further, the court gave legally correct instructions on the presumption of innocence both in voir dire and before closing arguments, and the statement was made only once. While we note that, unlike the statements in *Estes* and *Villa*, the prosecutor here commented on the presumption of innocence in rebuttal closing as opposed to the first closing argument, we conclude that the distinction is of little significance.

¶ 145 The prosecutor made this statement at the very beginning of rebuttal and then followed it with summaries of the evidence against defendant, including quotes from defendant's confession and KT's statements about the abuse. Furthermore, in the first closing, the prosecutor very strongly emphasized the beyond-a-reasonable-doubt standard and went through each element of the offenses, arguing to the jury that the prosecution had proved each element. Given the prosecutor's proper statements regarding the beyond-a-reasonable-doubt standard before the erroneous statement was made, and the proper summary of evidence and argument following it, we are not persuaded that plain error occurred.

### 3. Justice for KT

¶ 146 In the final statement to the jury during rebuttal closing, the prosecutor told the jury that "my job is done. The judge's job is done. You are now the justice system. Go back into that jury room, use your common sense and find justice. Find justice for [KT]." Defendant asserts that this statement constitutes plain error. Although we conclude that the prosecutor's statements were improper, we discern no reversible error.

¶ 147 Prosecutors may not pressure jurors by suggesting that guilty verdicts are necessary to do justice for a sympathetic victim. *McBride*, 228 P.3d at 223 (citing *United States v. Young*, 470 U.S. 1, 18, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

¶ 148 Even so, here, as in *McBride*, we need not decide if the error was plain because, even assuming the error was so obvi-

ous that the court should have intervened without the benefit of objection, the error did not affect the outcome of this case. *See id.*

¶ 149 As previously mentioned, the jury heard a confession from defendant and KT's testimony regarding the abuse she sustained at defendant's hands. In the confession, defendant acknowledged sexually assaulting KT "four or five times," he acknowledged both vaginal and anal sex, and he described the positions he employed, all of which corresponded to KT's allegations. Furthermore, although defendant later recanted his confession and contended that he based his admissions on reading an investigator's notes during the police interrogation, the digital video disc containing the confession shows that defendant looked at the investigator's notes for only three minutes during a multiple-hour interrogation. Hence, defendant did not have the substantial access to KT's outcry statements necessary to tailor a false confession.

¶ 150 Accordingly, the error was not sufficient to undermine the fundamental fairness of the trial and does not cast serious doubt on the reliability of the judgment of conviction. *See Weinreich*, 98 P.3d at 924.

## IX. Cumulative Error

¶ 151 Defendant asserts that cumulative error deprived him of a fair trial. We disagree.

¶ 152 The doctrine of cumulative error requires that numerous errors be committed, not merely alleged. *Whitman*, 205 P.3d at 387. A conviction will not be reversed if the cumulative effect of any errors did not substantially prejudice a defendant's right to a fair trial. *Id.* Here, although we have found some errors, because we do not perceive that they substantially prejudiced defendant's right to a fair trial, there is no reversible cumulative error.

## X. Constitutionality Issues

¶ 153 Defendant challenges the constitutionality of the rape shield statute, the Sex Offender Lifetime Supervision Act (SOLSA), and the determination of his habitual crimi-

nal charges without a jury. We reject these assertions.

## A. Preservation and Standard of Review

¶ 154 Defendant did not raise any constitutional arguments regarding the rape shield statute or SOLSA at trial. We exercise our discretion to address the challenges, but under a plain error standard. *See, e.g., People v. Devorss*, 277 P.3d 829, 834 (Colo. App.2011). Defendant objected to the court's determination of his habitual criminal charges without a jury; thus, that challenge is preserved.

¶ 155 We review constitutional challenges to a statute de novo. *People v. Valles*, 2013 COA 84, ¶ 7, —— P.3d —— (citing *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007)). A statute is presumed to be constitutional. *Id.* Thus, the party challenging its validity has the burden of proving unconstitutionality beyond a reasonable doubt. *Id.*

## B. Application

### 1. Rape Shield Statute

¶ 156 Defendant asserts the rape shield statute is unconstitutional as applied to him and on its face. We disagree.

¶ 157 Concerning his "as applied" challenge, defendant argues that he submitted a sufficient offer of proof evidencing KT's sexual knowledge and experience but nevertheless was precluded from confronting and cross-examining her. He contends that *McKenna*, 196 Colo. at 374, 585 P.2d at 279–80, in which the court upheld the rape shield statute's constitutionality, is distinguishable because there, the defendant failed to make the required offer of proof. We do not read *McKenna* so narrowly.

¶ 158 In *McKenna*, the court did not predicate its determination of constitutionality on the defendant's failure to make an offer of proof. Instead, the court held that requiring a defendant to follow the procedures of the rape shield statute and provide a legitimate theory of relevance for the admission of otherwise prohibited evidence does not violate a defendant's right to present a defense or right to confrontation. *Id.* at 278; *see also Villa*, 240 P.3d at 353; *Gholston*, 26 P.3d at 8.

¶ 159 Here, the denial of defendant's request does not mean that the statute is unconstitutional as applied to him because "there is no constitutional right to introduce irrelevant and highly inflammatory evidence." *McKenna*, 196 Colo. at 374, 585 P.2d at 279. Hence, the statute is constitutional as applied to defendant.

¶ 160 Defendant contends that the rape shield statute is unconstitutional on its face because it is inconsistent with section 16–10–301, C.R.S.2013, and that inconsistency renders the statute fundamentally unfair and a violation of equal protection. We reject this contention.

¶ 161 Under section 16–10–301, a defendant's prior sexual acts are admissible in a sexual assault prosecution for any reason other than propensity to commit the crime charged. The statute lists several appropriate purposes such as motive, identity, modus operandi, and showing a common plan. § 16–10–301(3), C.R.S.2013. The General Assembly enacted this statute because

> [t]hese offenses usually occur under circumstances in which there are no witnesses except for the accused and the victim, and, because of this and the frequent delays in reporting, there is often no evidence except for the conflicting testimony.... In addition, it is recognized that some sex offenders cannot or will not respond to treatment or otherwise resist the impulses which motivate such conduct and that sex offenders are extremely habituated. As a result, such offenders often commit numerous offenses involving sexual deviance over many years, with the same or different victims, and often, but not necessarily, through similar methods or by common design.

§ 16–10–301(1).

¶ 162 In contrast, the rape shield statute makes evidence of a sexual assault victim's prior sexual history presumptively irrelevant in sexual assault proceedings. § 18–3–407. The statute mentions two exceptions: prior or subsequent sexual conduct with the actor, or evidence of specific instances of sexual

activity showing the origin of semen, pregnancy, or disease offered for the purpose of showing that the act or acts charged were or were not committed by the defendant. § 18–3–407(1). Also, as previously noted, the defendant can make a sufficient showing of proof that the prior sexual acts evidence is relevant to a material issue in the case. § 18–3–407(2).

¶ 163 The supreme court has concluded that the rape shield statute was designed to correct the practice of allowing wide latitude in cross-examining rape victims on prior sexual conduct, something that very often has little bearing on the victim's or witness's credibility, or the issue of consent. *McKenna*, 196 Colo. at 370–71, 585 P.2d at 277. Thus, the statute is meant to "provide rape and sexual assault victims greater protection from ... 'fishing expeditions' into their past sexual conduct, without a preliminary showing" that the evidence elicited will be relevant to some issue in the pending case. *Id.* at 371, 585 P.2d at 278. The statute is meant to strike a balance by conditioning the admission of evidence of the victim's history on the defendant's preliminary showing that it is relevant. *Id.*

¶ 164 A division of this court has previously addressed whether the differences between sections 16–10–301 and 18–3–407 constitute a violation of a defendant's due process and equal protection rights. *Villa*, 240 P.3d at 353. The *Villa* court concluded that, contrary to defendant's assertion, there is no suspect class involved here, and therefore rational basis review applies. *Id.* The court also concluded that section 18–3–407 is a rational attempt by the legislature to protect the complainant from harassment and humiliation and to encourage victims of sexual assaults to report the crime, and the statute therefore does not violate equal protection or due process of law. *Id.* at 354.

¶ 165 We agree with the *Villa* division's conclusion, and conclude that defendant has not proved beyond a reasonable doubt that section 18–3–407 has no rational relationship

to a legitimate legislative purpose, or that the General Assembly's decision was unreasonable, arbitrary, or capricious. *See id.* at 353. Hence, we perceive no error, let alone plain error.

### 2. SOLSA

¶ 166 As defendant notes, several divisions of this court have previously considered the constitutionality of SOLSA and have rejected all such challenges. *See, e.g., People v. Firth*, 205 P.3d 445, 452 (Colo.App.2008); *People v. Lehmkuhl*, 117 P.3d 98 (Colo.App. 2004); *People v. Dash*, 104 P.3d 286 (Colo. App.2004); *People v. Oglethorpe*, 87 P.3d 129 (Colo.App.2003); *People v. Strean*, 74 P.3d 387 (Colo.App.2002). We are not persuaded to depart from these decisions, and reject defendant's contentions for the reasons stated in those cases. Hence, we again perceive no error, let alone plain error.

### 3. Habitual Criminal Charges

¶ 167 Defendant asserts that he was denied his Sixth Amendment right to a jury trial because a judge, rather than a jury, determined his habitual criminal charges. We reject the assertion. *See Lopez v. People*, 113 P.3d 713, 723 (Colo.2005); *People v. Moore*, 226 P.3d 1076, 1089 (Colo.App.2009).

¶ 168 The judgment is affirmed.

JUDGE TERRY and JUDGE MÁRQUEZ *, concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.