The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 23, 2020

## 2020COA114

**No. 18CA2055,** *People v. Deutsch* **— Crimes — Criminal
Extortion; Criminal Law — Indictments — Constructive
Amendment; Constitutional Law — Due Process**

A division of the court of appeals applies the concept of

constructive amendment to the criminal extortion statute for the

first time.  The division concludes that because the instruction

expanded the bases upon which the defendant could be convicted,

the instruction constructively amended the complaint and

information.

The division also finds no actual conflict of interest between an

attorney and a client when the client has threatened the attorney.

Court of Appeals No. 18CA2055
Jefferson County District Court No. 17CR3234
Honorable Jeffrey R. Pilkington, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Keith Edwin Deutsch,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUSTICE MARTINEZ*
Román and Pawar, JJ., concur

Announced July 23, 2020

Philip J. Weiser, Attorney General, Jillian J. Price, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sarah Spears, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    Defendant, Keith Edwin Deutsch, appeals the judgment of conviction entered on jury verdicts finding him guilty of criminal extortion and violation of a custody order. We affirm in part and vacate in part.

I.    Background

¶ 2    Deutsch and his ex-wife, Alicia O'Sullivan, share custody of their daughter according to the terms specified in a court custody order. Deutsch and O'Sullivan talk about their daughter primarily through Talking Parents, an e-messaging system that keeps a record of communications to support co-parenting.

¶ 3    On September 8, 2017, O'Sullivan went to pick up her daughter from daycare and discovered that Deutsch had already picked her up. O'Sullivan contacted Deutsch via Talking Parents and informed him that this was not his parenting time and he needed to return their daughter to her. When Deutsch refused, O'Sullivan called the police. After a deputy arrived, O'Sullivan spoke with Deutsch on speakerphone. Deutsch threatened that he would not return their daughter until O'Sullivan paid him $1988, gave him additional parenting time, and allowed their daughter to take a vacation with him during her parenting time. O'Sullivan told

him that she "would give him whatever he wanted if he would just bring her back." Deutsch then brought their daughter to a park near O'Sullivan's house.

¶ 4 Deutsch was arrested and charged with criminal extortion (threat of economic harm) and violation of a custody order. Following a jury trial, he was found guilty as charged and sentenced to two years of probation on each count, to be served concurrently.

## II. Deutsch's Right to a Fair Trial and Conflict-Free Counsel Was Not Violated

¶ 5 Deutsch first contends that the court presiding over the conflict hearing violated his right to a fair trial and conflict-free counsel by failing to advise him of his rights and the risks associated with waiving conflict-free representation. We disagree.

### A. Additional Background

¶ 6 On the morning of trial, defense counsel moved to withdraw because of a conflict of interest between him and his client. A conflict hearing was held before another judge.

¶ 7 Defense counsel told the conflict court that, on more than one occasion during trial preparations, Deutsch had become verbally abusive and screamed at him, using threatening, obscenity-laced

2

language. At one point, defense counsel stated that he threatened to dial 911 unless Deutsch ceased his behavior. The morning of trial, defense counsel spoke with Deutsch outside of the courtroom and advised him that he "could very well have a conflict with him, and would not be able to represent him." Deutsch blocked his entrance to the courtroom, "became very upset," looked "as if he was going to head-butt [him]," and "grabbed [him] physically." Defense counsel told the conflict court that he felt threatened and that "the relationship has devolved to the point that I cannot represent him."

¶ 8        When the conflict court asked Deutsch whether he agreed with his defense counsel's description of what happened, Deutsch responded that "[e]verything he said is a lie," his attorney showed up unprepared for trial, and he wanted to avoid another continuance. He also explained this was his third attorney because the first attorney was not prepared for trial and there was a payment issue with the second attorney. When the conflict court asked Deutsch whether he wanted the court to continue the trial, Deutsch responded, "No, please, not." At one point, the conflict court asked Deutsch whether he could make peace with his

3

attorney and go to trial that day. Deutsch replied that he was "perfectly fine going to trial. I see why he's not, because he has no idea – he's never even read the discovery. But I'm ready."

¶ 9 Deutsch also told the conflict court, "I do need continuance. I need a competent attorney." Ultimately, the conflict court confronted Deutsch with the ambivalence he had expressed and directly asked him, "Are you asking me to give you a continuance so you can hire a different lawyer?" Deutsch said he did not want to continue the trial and repeated that response when the court asked again. Deutsch also said, in response to the court's questions, that he did not want to represent himself and that he wanted his current attorney to represent him at trial.

¶ 10 The court also asked defense counsel whether he thought he could "get along with [Deutsch] well enough to represent him at a one-day trial." He responded that he did not think so: "I just feel that it is – there is no relationship, attorney/client, that remains." He later elaborated that his concerns are "for me, and I simply do not feel safe working with Mr. Deutsch anymore."

¶ 11 The conflict court denied the motion to withdraw, finding,

> I just think that if I were to grant this request to withdraw, that we'd be right back in the same situation a month or two hence. And given what Mr. Deutsch has told me, I think that this is one of those matters, [counsel], where you're just going to have to do the best you can with Mr. Deutsch, and if things get worse, then I get [sic] guess we can all come back here. I'll be here all day. You'll need to let me know.
>
> But as for right now, [counsel's] request to withdraw from the case will be denied for the reasons I've stated, and gentlemen, you'll need to go back to [the trial court], and we'll bring the jury up.

¶ 12    The trial then proceeded as scheduled and defense counsel did not renew his motion to withdraw.

## B.    Standard of Review

¶ 13    We review de novo whether an actual conflict of interest existed. *People v. Hagos*, 250 P.3d 596, 613 (Colo. App. 2009).

## C.    Applicable Law

¶ 14    A defendant has a constitutional right to conflict-free counsel. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Ragusa*, 220 P.3d 1002, 1006 (Colo. App. 2009). This is considered essential to a fair trial. *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). A conflict of interest exists when an attorney's ability to represent a client is materially limited by the attorney's own

interests.  *People v. Edebohls*, 944 P.2d 552, 556 (Colo. App. 1996).

Although a defendant is entitled to conflict-free counsel, the

defendant may waive this right.  *People v. Harlan*, 54 P.3d 871, 879

(Colo. 2002).

¶ 15     "Once a trial court is put on notice of a potential conflict of

interest between the defendant and defense counsel, it has a duty

to inquire into the propriety of continued representation by

counsel."  *Hagos*, 250 P.3d at 613 (citation omitted).  However, a

trial court's failure to inquire into a potential conflict is not

automatic grounds for reversal.  *See Mickens v. Taylor*, 535 U.S.

162, 174 (2002).  To obtain reversal, the defendant must show that

defense counsel was subject to an actual conflict of interest.

*Hagos*, 250 P.3d at 613-14.

¶ 16     "An actual conflict of interest is one that is real and

substantial, and adversely affects counsel's performance, while a

potential conflict of interest is one that is possible or nascent, and

in all probability will arise."  *People v. Curren*, 228 P.3d 253, 258

(Colo. App. 2009).

## D. Analysis

¶ 17    The People concede that the conflict court did not advise Deutsch of his right to conflict-free counsel.  Nevertheless, because there was no actual conflict, the People argue that "any deficiencies in the conflict court's advisement are moot."  We agree.

¶ 18    Deutsch argues that the actual conflict of interest here is similar to that in *Edebohls*, 944 P.2d 552.  But, in *Edebohls*, defense counsel had pending criminal charges in the same court.  *Id.* at 554.  Defense counsel's personal interest in the outcome of the case against him before the same court was an actual conflict of interest.  *Id.*  Here, even though the conflict court told Deutsch and his attorney "if things get worse . . . we can all come back here," neither returned to the conflict court.  Deutsch argues that, because his attorney was uncomfortable being in the same room with him, this fear "may well have factored into [his attorney's] trial strategy, pretrial advice, and likely negatively impacted his ability to prepare for trial."  While fear of a client could be an actual conflict of interest, from the record before us we cannot determine whether fear actually affected the attorney's ability to represent Deutsch.  Deutsch also argues that communication with his attorney was

7

"irreparably dysfunctional." But an actual conflict of interest requires "more than a theoretical conflict." *People v. Garner*, 2015 COA 174, ¶ 55 (citation omitted). Thus, animosity does not constitute an actual conflict. *People v. Hodges*, 134 P.3d 419, 425 (Colo. App. 2005), *aff'd on other grounds*, 158 P.3d 922 (Colo. 2007). On this record we cannot determine the nature of communications between Deutsch and his attorney after the conflict court urged them to keep trying. We will not presume that the attorney-client relationship deteriorated such that the potential conflict of interest became an actual conflict of interest.

¶ 19    Accordingly, Deutsch fails to demonstrate a conflict of interest that adversely affected his attorney's performance. Although Deutsch is correct that courts "need not attempt to calculate the amount of prejudice attributable to the conflict," *Edebohls*, 944 P.2d at 559, this is a distinct inquiry from determining whether "an actual conflict of interest affected the quality of representation conclusively establish[ing] a constitutional violation requiring reversal." *People v. Delgadillo*, 2012 COA 33, ¶ 36.

¶ 20    Because Deutsch fails to demonstrate "the existence of an actual conflict that adversely affected counsel's performance,"

*Hagos*, 250 P.3d at 614, the error — failure to advise about the right to conflict-free counsel — does not require reversal. *Id.* Moreover, because there was no actual conflict, we need not determine whether Deutsch validly waived his right to conflict-free counsel.

### III. There Was Insufficient Evidence to Support Deutsch's Conviction for Criminal Extortion in Light of the Constructive Amendment

¶ 21     Deutsch also argues that the trial court violated his due process rights by permitting a constructive amendment of the criminal extortion count. He further argues that, in light of the constructive amendment, there was insufficient evidence to support his conviction for criminal extortion: specifically, the prosecution failed to prove beyond a reasonable doubt that he made a substantial threat to cause economic hardship, as alleged in the complaint. We agree and address each contention in turn.

### A.     Standards of Review

¶ 22     We review variances de novo. *People v. Rail*, 2016 COA 24, ¶ 48, *aff'd on other grounds*, 2019 CO 99. Deutsch did not, however, preserve this issue for appeal. Accordingly, reversal is required only if there was plain error. *People v. Rediger*, 2018 CO

32, ¶ 33. Plain error is error that is both obvious and substantial. *Id.* at ¶ 48. An error is substantial if it so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at ¶ 52.

¶ 23 We also review sufficiency of the evidence claims de novo. *McCoy v. People*, 2019 CO 44, ¶ 6.

### B. Applicable Law

¶ 24 A person commits criminal extortion if

> (a) The person, without legal authority and with the intent to induce another person against that other person's will to perform an act or to refrain from performing a lawful act, makes a substantial threat to confine or restrain, cause economic hardship or bodily injury to, or damage the property or reputation of, the threatened person or another person; and
>
> (b) The person threatens to cause the results described in paragraph (a) of this subsection (1) by:
>
> (I) Performing or causing an unlawful act to be performed . . . .

§ 18-3-207(1), C.R.S. 2019. Thus, to commit criminal extortion, a person must (1) make a substantial threat to another person; (2) make this threat without legal authority and with the intent to

10

induce the other person to perform an act; and (3) threaten to cause the result, such as confining another person or threatening economic hardship, by performing an unlawful act. *People v. Campbell*, 174 P.3d 860, 866 (Colo. App. 2007).

C.    The Variance Constitutes a Constructive Amendment

¶ 25    In determining whether there is an impermissible variance, we consider whether "the charge contained in an indictment differs from the charge of which the defendant is convicted." *People v. Gallegos*, 260 P.3d 15, 25 (Colo. App. 2010). Generally, there are two types of variances: simple variances and constructive amendments. *People v. Pahl*, 169 P.3d 169, 178 (Colo. App. 2006). "A simple variance occurs when the charged elements are unchanged, but the evidence presented at trial proves facts materially different from those alleged in the indictment." *Id.* at 177. A constructive amendment, on the other hand, occurs "when jury instructions change an element of the charged offense to the extent the amendment 'effectively subject[s] a defendant to the risk of conviction for an offense that was not originally charged.'" *Id.* (quoting *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996)). "Constructively amending a charge violates a defendant's

11

constitutional due process rights . . . ." *People v. Hoggard*, 2017 COA 88, ¶ 27, *aff'd on other grounds*, 2020 CO 54.

¶ 26    Here, the prosecution charged Deutsch with criminal extortion under section 18-3-207(1)(a), (b)(I).  The complaint and information specifically alleged that Deutsch committed criminal extortion by "[making] a substantial threat to cause economic hardship."  But at the end of the trial, the court provided an elemental instruction to the jury that tracked the statute in its entirety, listing multiple ways in which Deutsch could have substantially threatened the victim.  No special interrogatory or unanimity instruction was provided to the jury to determine whether he was convicted of criminal extortion because he made a substantial threat to cause economic hardship.

¶ 27    Although constructive amendments sometimes occur when an instruction references a different statutory subsection than the complaint, *see, e.g., Rediger*, ¶ 35, this is not dispositive.  Rather, the key inquiry is whether the jury instruction "change[d] an essential element of the charged offense."  *Rodriguez*, 914 P.2d at 257.  Here, Deutsch was charged with and convicted of criminal extortion under section 18-3-207(1)(a), (b)(I).  However, while he was

12

charged with committing criminal extortion by threatening to cause economic hardship, the instruction included other possible threats. Therefore, the instruction changed an element of the charge. Because the instruction expanded the bases upon which Deutsch could be convicted beyond threatening to cause economic hardship, the instruction constructively amended the complaint and information. *See People v. Weeks*, 2015 COA 77, ¶¶ 49-52 (determining indictment was constructively amended when instructions included additional ways in which a person may be guilty of child abuse).

### D.   The Constructive Amendment Error Was Plain

¶ 28    Nevertheless, the constructive amendment is not reversible error unless it was obvious and "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

¶ 29    Here, the error is obvious. Whereas the complaint provided that Deutsch was charged with criminal extortion for "threaten[ing] to cause economic hardship," the jury instruction provided that he was charged with criminal extortion for "threaten[ing] to confine or

13

restrain, cause economic hardship or bodily injury to, or damage the property or reputation of, the threatened person or another person" as an element of the charge.

¶ 30     The error is also substantial. The information did not place Deutsch on notice that he would have to defend against this different element submitted to the jury. *See Rediger*, ¶ 51. In addition, we perceive a substantial likelihood that the jury found Deutsch guilty of criminal extortion for threatening to confine or restrain another person, rather than for threatening to cause economic hardship. The evidence presented at trial was that Deutsch threatened not to return his daughter to O'Sullivan. There was no evidence of a threat to cause economic harm. Further, in closing argument, the prosecutor explicitly argued that the "substantial threat that we're talking about here is that [Deutsch] has her child." The prosecutor never argued that the substantial threat was to cause economic harm.

¶ 31     Because we believe that the error here was obvious, substantial, and so undermined the fundamental fairness of Deutsch's trial as to cast serious doubt on the reliability of the judgment of conviction, we conclude that the trial court plainly

14

erred by allowing Deutsch's criminal extortion conviction to stand in spite of the constructive amendment.

### E. Insufficient Evidence Supports Deutsch's Criminal Extortion Conviction

¶ 32    Having found plain error, we must next determine the proper remedy.  If the evidence supports a conviction for criminal extortion under section 18-3-207(1)(a), (b)(I) as originally charged, we must remand for a new trial.  *Rediger*, ¶ 54 (citing *People v. Lopez*, 140 P.3d 106, 109 (Colo. App. 2005)).  But here, because the evidence does not support the conviction, we vacate the conviction and direct the trial court to dismiss the charge.  *See id.*

¶ 33    When considering a challenge to the sufficiency of the evidence supporting a conviction, we review "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *McCoy*, ¶ 63 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).

¶ 34    Here, the evidence showed that Deutsch threatened to maintain custody of his daughter contrary to the custody order

15

until O'Sullivan met his demands. Although Deutsch requested that O'Sullivan pay him money, that was the intended action, not the threat. Viewing these facts in the light most favorable to the prosecution, we cannot conclude that the evidence is sufficient to allow a reasonable juror to find that Deutsch committed criminal extortion by threatening to cause economic hardship to the victim. To the contrary, the evidence showed that he threatened to "confine or restrain . . . another person," § 18-3-207(1)(a), i.e., his daughter, with the intent to induce O'Sullivan to meet his demands. Because the evidence is insufficient to establish that Deutsch committed criminal extortion by threatening to cause economic hardship, we vacate his conviction.

#### IV. The Trial Court Did Not Violate Deutsch's Right to a Fair Trial by Admitting Other Acts Evidence

¶ 35  Lastly, Deutsch argues that the trial court violated his right to a fair trial by admitting evidence of other acts in violation of CRE 404(b). We disagree. Because we vacate his conviction for criminal extortion, we only address this argument as it pertains to his conviction for violation of a custody order.

## A.   Additional Background

¶ 36    As relevant here, the prosecutor admitted four exhibits at trial: a copy of the transcript of the custody order and copies of three excerpts of the Talking Parents communications.  Deutsch's counsel did not object to any of these exhibits at trial.

¶ 37    In the transcript of the custody order, there is reference to a "disturbing" poem written by Deutsch.  The contents of the poem are not included in the transcript and no further mention of it was made during the custody hearing.  Nor was it mentioned at trial.

¶ 38    In the first excerpt of the Talking Parents communications, O'Sullivan told Deutsch about her plans with their daughter for the weekend of September 8, 2017.  Deutsch told O'Sullivan he was taking a trip to New Zealand.  In the second excerpt, O'Sullivan reminded Deutsch that she would have parenting time "for quite some time given you are leaving for New Zealand."  Deutsch accused O'Sullivan of using substances during her pregnancy and being "a TERRIBLE mother."  And in the third excerpt, beginning four days before Deutsch picked up his daughter from daycare, he accused O'Sullivan of "blocking communication" with their daughter and again accused her of using substances during her

pregnancy. He also threatened that he would "use every means at my discretion to prove you insane." He later stated that he assumed he had parenting time with their daughter that weekend. The prosecutor referred to the Talking Parents communications excerpts during closing argument to refute the notion that Deutsch mistakenly believed that he had parenting time with his daughter that weekend.

## B. Standard of Review

¶ 39 A trial court's admission of evidence is reviewed for an abuse of discretion. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). An abuse of discretion occurs when the trial court's "ruling is 'manifestly arbitrary, unreasonable, or unfair,' or where it is based on an erroneous view of the law." *People v. Elmarr*, 2015 CO 53, ¶ 20 (citation omitted).

## C. Applicable Law

¶ 40 Evidence of other relevant offenses or acts may be admissible under CRE 404(b). Under CRE 404(b), "[e]vidence of other crimes, wrongs, or acts . . . may . . . be admissible for . . . proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity." However, it "is not admissible to prove the character of a person in

18

order to show that he acted in conformity therewith." CRE 404(b).

Rule 404(b) evidence "generally occurs at different times and under different circumstances from the charged offense." *People v. Trujillo,* 2014 COA 72, ¶ 69 (quoting *People v. Quintana,* 882 P.2d 1366, 1372 (Colo. 1994)). Thus, "evidence is properly designated" as Rule 404(b) evidence if it "involves a separate and distinct episode wholly independent from the offense charged," even if it is "similar in nature" to the charged offense. *Id.* (quoting *Quintana,* 882 P.2d at 1372-73).

¶ 41     To be admissible under Rule 404(b), evidence must comply with the four-prong test articulated in *People v. Spoto,* 795 P.2d 1314, 1318 (Colo. 1990). To comply with the *Spoto* test, evidence must

> (1) relate to a material fact of consequence in determining the action;
>
> (2) be logically relevant because it has a tendency to make the existence of the material fact more or less probable;
>
> (3) have logical relevance "independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character"; and

(4) have probative value that is not substantially outweighed by the danger of unfair prejudice.

*Id.*

## D. Analysis

¶ 42 Deutsch argues that the poem and Talking Parents communications constitute inadmissible prior act evidence. But because he did not preserve this claim, any error is not reversible unless the error is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Rediger*, ¶ 52. And here, any error is neither obvious nor substantial.

¶ 43 The transcript of the custody hearing in which the poem is referenced was admitted to establish the terms of the custody order. This was critical to determining whether Deutsch violated the terms of the order. However, the portion of the transcript that discusses the poem was not relevant to a material fact of consequence. *Spoto*, 795 P.2d at 1318 (prong one). Therefore, it was error to admit this portion of the transcript. Nevertheless, the error was not obvious or substantial. The poem was only briefly discussed at the custody hearing. And the contents of the poem were not part of the hearing

transcript, nor were they referenced at trial. Moreover, the trial court cannot be expected, sua sponte, to pause a trial to review a fifty-eight-page transcript to consider possible objections that could have been made and determine whether redactions would address those objections.

¶ 44 The Talking Parents communications were admitted to rebut Deutsch's defense that he did not intentionally deprive O'Sullivan of her parenting time with their daughter. *See* § 18-3-304(2), C.R.S. 2019 (Violation of a custody order requires "intent to deprive the lawful . . . person with parental responsibilities of the custody or care of a child[.]"). Their admission made his defense less probable than it would be without the evidence, independent of the inference that Deutsch has a bad character. Although some of the language used by Deutsch in the communications was threatening and antagonistic, any potential prejudice did not substantially outweigh its probative value. Furthermore, defense counsel also relied on portions of the Talking Parents communications to support his argument that this was simply a case of poor communication. Therefore, we perceive no error in admitting the Talking Parents communications.

## V.    Conclusion

¶ 45    We vacate the conviction for criminal extortion and remand for correction of the mittimus.  We affirm the judgment in all other respects.

JUDGE ROMÁN and JUDGE PAWAR concur.