22CA1352 Peo v Nielsen 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1352
Fremont County District Court No. 20CR524
Honorable Ronald M. Mullins, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mark Nielsen,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Mark Nielsen appeals his conviction on one count of reckless manslaughter.  We affirm.

## I.     Background

¶ 2     A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3     Nielsen and Danylle Shatto, who was Nielsen's fiancée at the time, lived together in a home (the residence) that Shatto rented from her uncle John Achertkirch.  Achterkirch and his stepdaughter, J.J., later moved into the residence.

¶ 4     After J.J. moved into the residence, Shatto learned that J.J. had an active arrest warrant.  On July 28, 2020, Shatto reported J.J.'s whereabouts to the police.  J.J. was arrested only hours after Shatto made her report.

¶ 5     When Achterkirch learned that J.J. had been arrested, he sent angry text messages to Shatto.  Nielsen and Shatto were alone in the residence when Achterkirch sent the texts.

¶ 6     Shortly thereafter, Achterkirch returned to the residence and announced that he "was going to kill [Nielsen and Shatto]."  Shatto and Achterkirch argued about J.J.'s arrest.  Nielsen interrupted the

argument and said to Achterkirch, "Come on, let's talk about this." In response, Achterkirch "knocked [Nielsen's] head" onto a counter.

¶ 7 Achterkirch then said to Shatto, "I'm going to effing kill you." He approached her with his "hands out." But before Achterkirch could reach her, Nielsen drew a gun and fatally shot him.

¶ 8 Nielsen was charged with one count of second degree murder and one count of the lesser included offense of reckless manslaughter.

¶ 9 Before trial, the court denied Nielsen's request for admission of evidence of Achterkirch's past violent acts toward women in his family. Nielsen sought to introduce such evidence at trial to support his self-defense theory.

¶ 10 At trial, defense counsel argued to the jury that Nielsen shot Achterkirch in defense of himself and Shatto.

¶ 11 The jury acquitted Nielsen of second degree murder but convicted him of reckless manslaughter.

¶ 12 On appeal, Nielsen contends that the court reversibly erred and violated his constitutional rights by barring him from presenting evidence of Achterkirch's prior violent acts against women in his family. In addition, Nielsen asserts that the court

plainly erred by not sua sponte instructing the jury to disregard testimony that the court ruled was inadmissible. Lastly, Nielsen argues that the court plainly erred by permitting the prosecutor to commit misconduct during rebuttal closing argument and that the cumulative errors at his trial require reversal of his conviction. We disagree.

## II. Analysis

### A. The Court Did Not Err by Excluding Evidence of Achterkirch's Prior Violent Acts

¶ 13 Nielsen contends that the court erred by barring him from introducing evidence of Achterkirch's prior violent acts against women in Achterkirch's family. We disagree.

#### 1. Standard of Review

¶ 14 "We review a trial court's evidentiary rulings for an abuse of discretion." *Rojas v. People*, 2022 CO 8, ¶ 16, 504 P.3d 296, 302. "A trial court abuses its discretion when it misconstrues or misapplies the law, or when its decision is manifestly arbitrary, unreasonable, or unfair." *People v. Knapp*, 2020 COA 107, ¶ 31, 487 P.3d 1243, 1252.

## 2. Additional Facts

¶ 15 Nielsen filed a pretrial notice that he intended to introduce evidence of Achterkirch's "past violent acts" to support his self-defense theory. Nielsen identified two acts in the notice: a 2009 alleged domestic violence incident involving Achterkirch and his then-wife (the DV incident) and Achterkirch's alleged 2019 sexual assault of J.J. (the sexual assault). Nielsen argued that he was entitled to tell the jury about these acts because "evidence of a victim's prior violent acts may be introduced when the defendant is asserting self-defense." However, he did not explain the connection between these acts and his assertion that he acted in self-defense when he shot Achterkirch.

¶ 16 At a pretrial motions hearing, defense counsel orally amended the notice to include the following allegations:

- J.J. told Nielsen about the sexual assault before the shooting, although defense counsel did not say how long before the shooting J.J. provided Nielsen with this information, or that J.J. told him when the sexual assault occurred.

- At the time of the shooting, Nielsen knew that Achterkirch once threatened to throw J.J. out of a vehicle and, on another occasion, had held a knife to J.J.'s throat (the threats). Defense counsel did not specify when Nielsen became aware of the threats or whether he knew when Achterkirch made the threats.

- Nielsen "did not know any of the specific facts" about the DV incident, "just that there was physical violence."

¶ 17  The prosecutor objected to admission of evidence of the DV incident, the sexual assault, and the threats (collectively, the prior acts) because defense counsel did not indicate when or how Nielsen became aware of them or when they occurred. The prosecutor argued that the court lacked sufficient information to make the findings necessary to admit evidence of the prior acts at trial. In addition, the prosecutor asserted that evidence of the prior acts was inadmissible under CRE 403 because it was "highly prejudicial."

¶ 18  The court ordered defense counsel to submit an amended notice of the prior acts and took the admissibility of the prior acts under advisement.

¶ 19    Nielsen's counsel filed an amended notice consisting of a single sentence:

> Prior to July 28, 2020, [Nielsen] knew of the following incidents of violence perpetrated by [Achterkirch]:
>
> That [Achterkirch] sexually assaulted [J.J.],
>
> That [Achterkirch] was physically abusive to his [then-]wife,
>
> That [Achterkirch] threatened to throw [J.J.] out of a moving truck, and
>
> That [Achterkirch] at some point held a knife to [J.J.]'s throat.

Defense counsel did not provide any further information regarding Nielsen's awareness of the prior acts, such as when he specifically learned about them or whether he knew when they occurred.

¶ 20    In ruling that evidence of the prior acts would be inadmissible at trial, the court said it would "consider an offer of proof at any time" and would "anticipate more substance at that juncture." Based on the limited information Nielsen had provided, the court said that Nielsen failed "to offer the substance of how he knew of the prior acts."

¶ 21    The court concluded that the prior acts were inadmissible because Nielsen failed to satisfy the "*Ferrell* test" for establishing

6

the relevance of the victim's prior violent act in a self-defense case. *See People v. Ferrell*, 613 P.2d 324, 326 (Colo. 1980); *People v. Lyle*, 613 P.2d 896, 898 (Colo. 1980). In addition, the court ruled that evidence of the sexual assault was inadmissible under CRE 401 because it did not "make it more probable" that Nielsen acted in self-defense and under CRE 403 because the jury would be confused about how the sexual assault related to the "violence between [the] two men." Lastly, the court determined that evidence of the DV incident was further inadmissible under CRE 401 and CRE 403 because it was "too remote in time" to the shooting and "the danger of unfair prejudice and confusion of the issues" outweighed the DV incident's probative value.

¶ 22  Nielsen never supplemented his amended notice.

### 3. Evidence of the Prior Acts Was Inadmissible Under the Second Prong of the *Ferrell* Test

¶ 23  Nielsen asserts that he made a sufficient offer of proof to establish a nexus between Achterkirch's prior acts of violence against women in his family and Nielsen's shooting of Achterkirch purportedly to protect himself and Shatto. We disagree.

7

¶ 24 "Without a nexus between the [victim]'s prior violent acts and the actions of the defendant, the occurrence of these prior violent acts would be of no consequence in the determination of the guilt or innocence of the defendant." *Lyle*, 613 P.2d at 898. Under the *Ferrell* test, a defendant may present evidence of a victim's prior violent act at trial only if

> (1) the defendant contends that he acted in self-defense and there is competent evidence to support the contention,
>
> (2) either the act occurred or defendant became aware of its occurrence within a reasonable time of the homicide, and
>
> (3) the defendant knew of the victim's prior violence at the time of the homicide.

*Ferrell*, 613 P.2d at 326.

¶ 25 The second prong of the *Ferrell* test is derived from the "remoteness test" set forth in *People v. Burress* — specific act evidence is relevant in a self-defense case so long as the "defendant establishes (1) that he was aware that the specific violent act took place, and (2) that either the act occurred or the defendant became aware of its occurrence within a reasonable time of his use of force in self-defense." 515 P.2d 460, 463-64 (Colo. 1973).

¶ 26     But even logically relevant evidence that satisfies the *Ferrell* test "may be excluded" if "its probative value is substantially outweighed by the danger of unfair prejudice." *People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002) (quoting CRE 403).

¶ 27     "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." CRE 103(a)(2).  Thus, "[w]hether a trial court abuses its discretion in excluding evidence depends upon the offer of proof under consideration by the trial court rather than a later assessment of the value of the evidence by a reviewing court." *People v. Saiz*, 32 P.3d 441, 448 (Colo. 2001); *see also People v. Crow*, 789 P.2d 1104, 1106 (Colo. 1990) ("A court abuses its discretion only when, based on the particular circumstances confronting it, its ruling . . . is manifestly arbitrary, unreasonable, or unfair.").

¶ 28     We need not analyze the first prong of the *Ferrell* test because the parties do not dispute that Nielsen asserted a self-defense

theory supported by competent evidence.  *See Ferrell*, 613 P.2d at 326.

¶ 29    Our analysis focuses on the second prong of the *Ferrell* test — "either the act occurred or defendant became aware of its occurrence within a reasonable time of the homicide" (the remoteness test).  *Id.*  The remoteness test, which requires consideration of "both the time of the prior violent act and the time of its discovery," guides the trial court in "determining whether a specific act of violence by a victim . . . could have created present apprehension or fear sufficient to justify the force used in the mind of a reasonable man." *Burress*, 515 P.2d at 464.  Absent a nexus between the prior violent act and the defendant's conduct, evidence of the act is irrelevant.  *See Lyle*, 613 P.2d at 898.

¶ 30    The court found that Nielsen's offer of proof regarding the prior acts did not satisfy the *Ferrell* test because Nielsen did not indicate how long before the shooting J.J. had "revealed" the prior acts to him.  Nielsen's offer of proof was thus inadequate to apprise the court when he learned about the prior acts or when they occurred. *See Saiz*, 32 P.3d at 448.  Rather, Nielsen vaguely said that he learned about the prior acts before "the incident."  Accordingly,

10

Nielsen's evidence of the prior acts did not satisfy the remoteness test. *See Ferrell*, 613 P.2d at 326.

¶ 31 Nielsen nonetheless contends that the court "ignored" the language of the remoteness test that "*either* the [prior acts] must have occurred *or* the defendant became aware of [their] occurrence within a reasonable time of the incident at hand." We disagree.

¶ 32 Under the remoteness test, the court must consider "both the time of the prior violent act and the time of its discovery." *Burress*, 515 P.2d at 464. The court concluded that Nielsen "fail[ed] to offer the substance of how he knew of the prior acts." Although, as noted above, the court invited Nielsen to make a further "offer of proof at any time" and observed that it "would anticipate more substance" in such a subsequent offer of proof. Yet Nielsen did not provide the court with any additional information regarding the timing of the prior acts or when he discovered them.

¶ 33 At trial, Shatto testified that J.J. moved into the residence around "a month and a half" before the shooting. But that testimony did not fill in the gaps in Nielsen's offer of proof. Nielsen did not establish that he learned about the prior acts when J.J. moved into the residence.

¶ 34    Nielsen asks us to infer a link between the time J.J. moved into the residence and when he discovered the prior acts. Nielsen's argument not only involves too great a logical leap, but it would require us to make a finding of fact that the court did not make. *See People v. Matheny*, 46 P.3d 453, 459 (Colo. 2002) ("[L]aw declaration is clearly the prerogative of appellate courts, and fact identification is clearly the prerogative of trial courts."). He does not point to any location in the record where he represented that J.J. told him about the prior acts when she moved into the residence or that he had not previously been aware of the prior acts.

¶ 35    In the absence of this information, the court correctly concluded that Nielsen's skimpy offer of proof fell short of satisfying the remoteness test. Because Nielsen bore the burden of apprising the court of "the substance of [the prior acts] evidence," his insufficient offer of proof undercuts his claim that the court improperly barred him from introducing evidence of the prior acts. CRE 103(a)(2); *see also Saiz*, 32 P.3d at 448; *Brewer v. Motor Vehicle Div.*, 720 P.2d 564, 570 (Colo. 1986).

¶ 36    Because Nielsen did not satisfy the second prong of the *Ferrell* test — the remoteness test — the court acted within its discretion

by excluding evidence of the prior acts.  In light of this holding, we do not reach Nielsen's CRE 403 argument.

### B. The Court's Lack of an Instruction to the Jury to Disregard Testimony

¶ 37 Nielsen contends that the court abused its discretion by not sua sponte instructing the jury to disregard a prosecution witness's testimony after sustaining defense counsel's objection to it.  We disagree.

### 1. Standard of Review

¶ 38 "We review a trial court's evidentiary rulings for an abuse of discretion." *Rojas*, ¶ 16, 504 P.3d at 302.  "A trial court abuses its discretion when it misconstrues or misapplies the law, or when its decision is manifestly arbitrary, unreasonable, or unfair." *Knapp*, ¶ 31, 487 P.3d at 1252.

### 2. Additional Facts

¶ 39 The prosecutor called Laura Rodriguez, one of Achterkirch's coworkers, to testify in response to Nielsen's counsel's assertion during his opening statement that Achterkirch was under the influence of methamphetamine at the time of his altercation with Nielsen.  Rodriguez described her interaction with one of

13

Achterkirch's heating, ventilation, and air conditioning clients the day after the shooting:

> [W]hen [Achterkirch] was not able to return [to the client's home] the next day, I called that client, advising them that another technician would be going there, and the client opposed that because they only wanted [Achterkirch]. They developed a relationship with [Achterkirch] and really liked him. And I told [the client], unfortunately [Achterkirch] had passed away, and they actually cried on the phone because it was — I mean, it's — that was [Achterkirch]. He took people's heart.

¶ 40　Defense counsel objected to this testimony (the inadmissible testimony) on unspecified grounds. The court sustained the objection. Defense counsel did not ask the court to instruct the jury to disregard the inadmissible testimony.

### 3.　The Court Did Not Abuse Its Discretion by Not Sua Sponte Instructing the Jury to Disregard the Inadmissible Testimony

¶ 41　Nielsen contends that the court abused its discretion by not sua sponte instructing the jury to disregard the inadmissible testimony.

¶ 42　But Nielsen does not cite, and we are not aware of, any authority requiring a trial court to provide such an instruction sua sponte after sustaining an objection to the evidence.

14

¶ 43    Colorado case law does not obligate a trial court to sua sponte direct the jury to disregard inadmissible evidence. *See People v. Mersman*, 148 P.3d 199, 203 (Colo. App. 2006) ("[T]o receive a curative instruction, a defendant must request it . . . ."); *see also People v. Krueger*, 2012 COA 80, ¶ 67 n.5, 296 P.3d 294, 309 n.5 (perceiving no reversible error in the court's failure to give a curative instruction sua sponte); *People v. Valencia-Alvarez*, 101 P.3d 1112, 1117 (Colo. App. 2004) (finding no error "in the trial court's failure sua sponte to instruct the jury to disregard the challenged remark").

¶ 44    And, as the People note, a curative instruction might have highlighted the inadmissible testimony for the jury even though defense counsel may have decided not to focus the jury's attention on it. Indeed, defense counsel may have chosen "for strategic or tactical reasons" not to request an instruction directing the jury to disregard the inadmissible testimony to avoid drawing "special attention to the evidence, thus giving it greater emphasis and jury impact than it would have had if left alone." *People v. Gladney*, 570 P.2d 231, 234 (Colo. 1977).

15

¶ 45    Because defense counsel did not seek an instruction that the jury should disregard the inadmissible testimony, we conclude that the court did not abuse its discretion by not giving such an instruction. *See Mersman,* 148 P.3d at 203. Accordingly, the court did not abuse its discretion by not instructing the jury to disregard the inadmissible testimony.

### C. The Court Did Not Plainly Err by Allowing the Prosecutor to Refer During His Rebuttal Closing to the Inadmissible Testimony

¶ 46    Nielsen next contends that the court plainly erred by permitting the prosecutor to engage in misconduct by referring to the inadmissible testimony during rebuttal closing argument. We disagree.

### 1. Standard of Review

¶ 47    "In a claim of prosecutorial misconduct, the reviewing court engages in a two-step analysis." *Wend v. People,* 235 P.3d 1089, 1096 (Colo. 2010). "First, it must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review." *Id.*

¶ 48    Because defense counsel did not object when the prosecutor referred to the inadmissible testimony, "we apply a plain error standard of review." *Id.* at 1097. "Crim. P. 52(b) permits [plain error] review if (1) there is an error, (2) that is plain, and (3) that affects the defendant's substantial rights." *People v. Crabtree*, 2024 CO 40M, ¶ 41, 550 P.3d 656, 667.

¶ 49    An error is plain if it is "so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection." *People v. Conyac*, 2014 COA 8M, ¶ 54, 361 P.3d 1005, 1020. "An error is substantial if it so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Deutsch*, 2020 COA 114, ¶ 22, 471 P.3d 1266, 1272.

¶ 50    "In the context of plain error review of prosecutorial misconduct, we will only reverse when the misconduct was 'flagrantly, glaringly, or tremendously improper.'" *People v. Robinson*, 2019 CO 102, ¶ 19, 454 P.3d 229, 233 (quoting *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005)).

## 2.     Additional Facts

¶ 51    During his closing argument, defense counsel reiterated his contention that Achterkirch had been high at the time of the altercation with Nielsen.  Even though the court had earlier sustained defense counsel's objection to the inadmissible testimony, the prosecutor repeated it during rebuttal closing argument in response to the defense's attack on Achterkirch's sobriety:

> You know [defense counsel] also told you that day that one of two things must have happened.  Either [Achterkirch] must have been high all day at work.  Well, what is that consistent with the evidence in the actual case?  His boss and his coworker came in and said that [Achterkirch] all day was doing an exceptional job at work.  *That people — his customers the next day wanted him back at their house again, that someone cried when they heard what happened to him.*

(Emphasis added.)

¶ 52    As noted, defense counsel did not object to this argument.

### 3.     The Court Erred by Not Striking the Prosecutor's Reference to the Inadmissible Testimony, but the Error, While Obvious, Was Not Substantial

¶ 53    The People assert that the prosecutor's reference to the inadmissible testimony was proper because the prosecutor was attempting to rebut defense counsel's argument that, when Nielsen

18

fought with Achterkirch, Achterkirch was "high on methamphetamine" and must have been "either injecting himself or smoking meth late in the workday or the second he g[ot] off work." We disagree.

¶ 54　　Although "prosecutors have wide latitude in the language and style they choose to employ, as well as in replying to an argument by opposing counsel," *People v. Samson*, 2012 COA 167, ¶ 30, 302 P.3d 311, 317, that latitude does not grant them license to violate the black-letter rule that lawyers may not refer to facts not in evidence, *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006) ("[I]t is not proper for a prosecutor to refer to facts not in evidence.").

¶ 55　　The prosecutor's reference to testimony to which the court had sustained defense counsel's objection was neither a benign rhetorical flourish nor a matter of style. *See id.* Because under well-established Colorado law, lawyers cannot refer to facts not in evidence during closing argument, we conclude that the prosecutor engaged in misconduct by repeating the inadmissible testimony. *See id.*

¶ 56    Next, we must determine whether the court plainly erred by not sua sponte striking the prosecutor's improper reference to the inadmissible testimony. *See Conyac*, ¶ 54, 361 P.3d at 1020 (Under the plain error standard of review, the defendant bears the burden to establish that the error was "so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection."). We break no new legal ground by noting that, in cases tried to a jury, the court must "prevent inadmissible evidence from being suggested to the jury by any means." CRE 103(c). Thus, it was obvious at the time of Nielsen's trial that a prosecutor may not refer to inadmissible evidence when addressing the jury. *See People v. Marko*, 2015 COA 139, ¶ 207, 434 P.3d 618, 657 ("[A] prosecutor may not misstate the evidence nor may a prosecutor refer to facts not in evidence." (Internal citations omitted)), *aff'd on other grounds*, 2018 CO 97, ¶ 207, 432 P.3d 607; *Walters*, 148 P.3d at 334.

¶ 57    For these reasons, we conclude that the court's silence when the prosecutor referred to the inadmissible testimony constituted error and that the error was obvious because the court "should

have been able to avoid it without benefit of objection." *Conyac*, ¶ 54, 361 P.3d at 1020.

¶ 58    Accordingly, we turn to whether the error was substantial — whether it so undermined "the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Deutsch*, ¶ 22, 471 P.3d at 1272. We conclude that the error was not substantial and, therefore, was not plain and does not warrant reversal.

¶ 59    Notably, the prosecutor's reference to the inadmissible testimony was momentary; it consisted of a single sentence within a rebuttal closing argument that spans eight transcript pages over the course of a nine-day trial. Because the prosecutor's misconduct was fleeting, the lack of sua sponte judicial intervention to strike it "does not warrant the drastic remedy of reversal under the plain error standard." *People v. Salazar*, 2023 COA 102, ¶ 53, 542 P.3d 1209, 1221 (quoting *Domingo-Gomez*, 125 P.3d at 1055).

¶ 60    Even if Nielsen is correct that the prosecutor improperly referred to the inadmissible testimony during rebuttal closing to "manipulat[e] the jurors' emotions" and "invoke their sympathy for [Achterkirch]," Nielsen's speculation regarding the prosecutor's

21

intent cannot overcome the brief statement's harmlessness to his defense. Similarly, Nielsen offers no support for his related argument that the prosecutor improperly invoked the inadmissible testimony despite knowing it had not been admitted into evidence.

¶ 61 In addition, Nielsen argues that the prosecutor's misconduct was particularly harmful, and thus warrants reversal, because "rebuttal closing is the last thing a juror hears from counsel before deliberating." Nielsen's contention proves too much, however, as fleeting references to facts not in evidence during a rebuttal closing argument are not automatic grounds for reversal. In any event, after the prosecutor referred to the inadmissible testimony, the court paused the prosecutor's rebuttal closing argument and dismissed the jury to conduct a bench conference. Thus, the prosecutor's reference to the inadmissible testimony was not the last thing the jury heard before beginning its deliberations.

¶ 62 Accordingly, we conclude that the court did not plainly err by not interrupting the prosecutor's rebuttal closing to strike the prosecutor's reference to the inadmissible testimony.

### D. The Cumulative Error Doctrine Does Not Apply

¶ 63    Nielsen asserts that the court's cumulative errors deprived him of a fair trial. We disagree.

¶ 64    "[R]egardless of whether any error was preserved or unpreserved," under the cumulative error doctrine, "reversal is warranted when numerous errors in the aggregate show the absence of a fair trial, even if individually the errors were harmless or did not affect the defendant's substantial rights." *Howard-Walker v. People*, 2019 CO 69, ¶ 26, 443 P.3d 1007, 1012. "Stated simply, cumulative error involves cumulative prejudice." *Id.* at ¶ 25, 443 P.3d at 1011. "The doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *Conyac*, ¶ 152, 361 P.3d at 1030.

¶ 65    We identified at most one trial error. But "a single error is insufficient to reverse under the cumulative error standard." *People v. Thames*, 2019 COA 124, ¶ 69, 467 P.3d 1181, 1194.

¶ 66    Thus, we conclude there is no cumulative error.

### III. Disposition

¶ 67    The judgment of conviction is affirmed.

JUDGE PAWAR and JUDGE LUM concur.